## STATE v. BUSTER HOOKS.

(Filed 7 April, 1948.)

**1. Rape § 4—**

Evidence *held* sufficient to overrule motion to nonsuit in this prosecution for rape.

**2. Criminal Law § 81c (3)—**

The admission of evidence corroborating the testimony of a witness as to a fact not controverted by defendant could not be prejudicial.

**3. Criminal Law § 42d—**

The prosecuting witness identified defendant upon the trial as the perpetrator of the crime. Testimony of statements made by prosecutrix immediately after the crime was committed to the effect that a colored man had broken into her house and attacked her but that she did not know his name, and that when defendant was shortly thereafter brought before her, she identified him, *is held* competent for the purpose of corroborating the testimony of the prosecuting witness.

**4. Same—**

Where defendant has attacked the credibility of a State's witness by cross-examination, the scope of evidence competent for the purpose of corroborating the witness is not limited to those facts testified to by her which are controverted by defendant.

**5. Criminal Law § 50d—**

A remark of the court that it would allow the introduction of the finger-prints as found at the scene and the fingerprints of defendant for the purpose of identification, will not be held for error as an expression of opinion that the fingerprints were actually taken from the scene of the crime, it being obvious that the court was merely identifying the exhibits offered by the State.

**6. Criminal Law § 38c—**

The introduction in evidence of the cap found at the scene of the crime shortly after its occurrence, identified by defendant's mother-in-law as being defendant's cap, is without error when there is evidence that defendant was wearing the cap when he left his home shortly before the crime was committed and returned without it.

**7. Criminal Law § 78e (2)——**

    A misstatement made in stating the contentions of the State that defendant had admitted a witness to be a fingerprint expert, will not be held for error on defendant's exception when the misstatement is not called to the court's attention at the time.

DEFENDANT's appeal from *Pittman, J.,* September Term, 1947, RANDOLPH Superior Court.

The defendant was brought to trial on an indictment charging him with raping one Ora Hughes Bouldin. The evidence was substantially as follows:

Mrs. Bouldin testified that she was at home on the night of the occurrence, in her house near Archdale with her two children, one about seven and the other about 11. That she didn't know Buster Hooks by name, but had seen him pass the house twice a day going to and from his house which was about one and one-half miles from her house; that there are three or four houses with colored people up there.

After she had gone to bed and got to sleep she heard a noise—heard matches striking, and saw the defendant at the foot of her bed. She jumped up, screaming, and ran to the door. Before she could get it open the defendant reached her and took her by the throat, and choked her so that she turned blind. As she tried to "holler" he choked and cursed her, and threatened to kill them all. She jerked loose and tried to reach the door again and he knocked her back, and in her second attempt to get to the door he knocked her down. When she came to he knocked her to the floor again, and then completed the act of sexual intercourse. The little girls were still in bed.

She testified that when he got ready to leave he asked her if she had any idea who he was, and she told him no. Then he asked her if she'd ever seen him before, and she replied that she had not; but she had seen him pass the road every day and she knew where he lived. He had never been to her house for anything. He then told her he was a convict, cursed her and told her not to turn on the light until he got out of the house. In going out he ran into the piano, and stepped on the little 11-year-old girl.

Witness saw him after he got out of the house, running in the direction of his home. While in the house he was barefoot but he had on his shoes when he left, going down the road.

Witness got the children and ran to a house back of the barn. She was afraid the defendant might see her if she tried to cross the road. She went to Mr. Harrington's who lives on their place. His daughter married Calhoun and he was also there.

The sheriff came while she was there. She told them who she thought the man was, where he lived. That morning, about daylight, a deputy

brought the man in and witness identified him. She had seen him pass the house every morning and evening, walking on the hard surface to and from Archdale. A photograph of the witness taken after the occurrence, showing bruises, was identified and used to illustrate her evidence.

Witness was carried to the hospital where she remained a few days and then went to the home of a brother. Witness exhibited to the jury the marks she said defendant made on her neck, which she said were made by "the Hooks man."

The defendant, she testified, entered the house through a bedroom window. The doors were all locked. She was sleeping in the living room.

The cross-examination brought a reiteration of the same matter.

Dr. Croom testified that he examined the prosecutrix the morning of the 16th and found a fresh bruise just anterior to the left ear, and multiple scratch marks on the left side of the neck, extending from the angle of the jaw to the midline of the neck, and a scratch under the right collar bone. She was in a state of nervous collapse. The scratches, in his opinion, were caused by fingernails, and the bruise on the side of her face was caused by a blow from a semi-solid object. She was admitted to the hospital about mid-morning and was in his care until the 18th, and was seen again in his office the 23rd of August.

Betsy Bouldin, daughter of the prosecutrix, testified that she was ten years old, and in the fifth grade in school. On the night of the 16th, she was sleeping on a pallet in the living room. The witness then corroborated her mother as to what took place and identified the defendant as the man who assaulted her mother. She said she had seen him pass the house frequently.

P. E. Calhoun testified that prosecutrix came to his house about morning of the 16th. He first heard her screaming and when he opened the door she ran in, accompanied by her little children.

When witness undertook to tell what she said, attorneys for defendant objected, and the court instructed the jury that it was admitted for the purpose of corroborating Mrs. Bouldin and not as substantive evidence. Calhoun then said Mrs. Bouldin stated a colored man had broken into her house. Witness said she was in a hysterical condition. She had these marks on her neck. Witness had the sheriff called, and they went to Buster Hooks' home and saw him in the house—he had no clothes on but later put on blue overalls and blue shirt, black saddletop shoes with buckle. They carried Hooks back to Calhoun's house, where Mrs. Bouldin was much agitated at seeing him. She declared that he was the man.

On cross-examination the witness stated that Mrs. Bouldin was very disturbed. When she first got there she said somebody had broken in her house. "She told me exactly where this guy here lived. She said she

didn't know his name; she told me somebody else lived in that house and it was the largest fellow. I did not see the other one in there that night. I'd say about 45 pounds difference in the weight of this man and the other and about four inches in height."

R. L. White was asked to testify to a statement made by Mrs. Bouldin before him at the Calhoun's house, and on objection was permitted to testify, as corroborative of Mrs. Bouldin only, "that a colored man broke into her house and attacked her; that she knew where he lived, but didn't know his name. There were two colored men living in the same house, but she would know which one attacked her; said she had seen him. In consequence of that we went to his house and got him and brought him to Mr. Calhoun's and Mrs. Bouldin said that was the man."

"Q. What statement did she make there in the presence of the defendant?" Objection, overruled, exception.

"A. She said that was the man that attacked her."

W. B. Lassiter testified that he is an officer of the County. That Mrs. Bouldin had told him a darky had broken into her house and attacked her. (Admitted for purpose of corroboration only.) She said she did not know who it was, but he lived up the road in the third house.

When the defendant was brought before them at the Calhoun place both the prosecutrix and her daughter identified him. The defendant denied that he had been in the house. Hooks made no effort to escape. He did not seem excited or scared; witness stated that he was the jailer; knew the other colored man who lived in the third house.

A. E. Garner, presented as a fingerprint expert, testified to his training and experience in that line or skill, and, over the objection and exception of the defendant, was admitted to testify as an expert. His testimony was to the effect that he had taken photographs of the back room window, which were used to illustrate the evidence. On the inside of the window sill witness found several prints, not many of them good. Witness took pictures of a few of them. "I photographed prints on the inside of this frame. The screen was open about like it shows and there was a cut place. I photographed those fingerprints. I made this enlarged fingerprint; . . . I later took the fingerprints of the defendant Buster Hooks . . . for identification." Witness referred to an enlarged photograph of the fingerprints of the right ring finger of defendant. State's Exhibit E.

The Court: "The Court will allow the introduction of the fingerprint as found on the frame of the screen of the home of Mrs. Bouldin and also the fingerprints of defendant for the purpose of identification." Objection by defendant. Overruled, and defendant excepts. (Witness takes Exhibits C and E.)

Witness testified that Exhibit E was taken from the right ring finger of Buster Hooks' hand. The other exhibit was taken from the frame of the screen at Mrs. Bouldin's. Witness then compared the exhibits in detail and stated they were identical, and added, "In my experience and work I have never found two fingerprints alike unless they came from the same finger."

Cross-examined, the witness testified that he had picked the best pictures to be enlarged; that he had photographed all fingerprints found. It could be possible somebody else had left some fingerprints there; couldn't swear all are the same as those; "there was no way to tell how long the fingerprints had been on the window; after they've been there so long they age and won't take powder—I'd say ten or twelve hours. On the outside in the weather, dew, etc., they won't last as long as on the inside."

There would be some similarity in fingerprints in some cases—"I found another fingerprint that corresponded with this card but I did not enlarge them. . . . There probably have been mistakes made on fingerprints but there are no mistakes made on this one because I took the picture. I have 12 points of identification; they are exactly alike. . . . This is the first case I have been in involving a capital case."

W. P. Whitley, admitted by defendant to be an expert, testified that he had charge of the City-County Identification Bureau at Raleigh and had been in that work 22 years. He had examined Exhibit D containing a complete set of fingerprints on a card marked Buster Hooks and found that fingerprints on five or six of the photographs corresponded with fingerprints on that card. That he examined Exhibits C and E and found points in the prints from 1 to 12 corresponded exactly. Witness stated he was positive the prints were from one and the same person.

On cross-examination witness stated he did not know personally where the prints came from.

A. E. Garner, recalled, identified a cap or toboggan exhibited to him, and stated he had picked it up in the living room of Mrs. Bouldin's home on the morning of the 16th of August. The cap was introduced in evidence. Defendant excepted.

Lillie Bowman testified that she was Buster Hooks' mother-in-law; that the cap put in evidence was Buster Hooks' and the last time she saw it, it was on his head. That on the night of the 16th Buster came home about 12 o'clock with witness' daughter, declined to eat, smoked, and went to bed. He then got up and went out, staying about an hour. He had the cap on when he went out, but did not have it on when he came back.

The other man in the house was her son. He was not there when the officers came. Did not know where he was.

STATE *v.* HOOKS.

There was testimony as to the good character of Mrs. Bouldin.

The State rested. Defendant demurred to the evidence and moved for judgment of nonsuit. Motion was overruled and defendant excepted.

Exceptions to the charge discussed in the opinion embrace objections to statements of the court in arraying and reviewing the evidence, as follows:

Reference to the statement of the witness Calhoun that Mrs. Bouldin had stated to him the defendant was the man who attacked her; to the statement that A. E. Garner was "admitted" as an expert in the science of fingerprinting; to the State's contention that when taken the defendant did not have a cap.

The evidence was submitted to the jury who returned a verdict that the defendant was guilty of the crime of rape.

The defendant moved to set aside the verdict for errors committed during the trial and the motion was declined. Defendant excepted. To the ensuing sentence of death defendant objected, excepted, and appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Smith & Walker for defendant, appellant.*

SEAWELL, J. This appeal brings up for review exceptions taken on the trial to the admission of evidence, the refusal to nonsuit the case on defendant's demurrer to the evidence, the remarks made by the court in the course of the trial, and the validity of certain instructions in the judge's charge.

The motion to nonsuit was properly denied.

Some of the exceptions have been abandoned and are not brought forward in the brief, and certain others have not been considered of sufficient merit to demand discussion, although they have been carefully examined. Those exceptions upon which the appellant most seriously insists have been carefully noted and discussion will be directed to them.

Considerable attention is given in appellant's brief to the admission of the testimony of Calhoun and White to the effect that the prosecutrix had previously, shortly after the occurrence, stated to them that a colored man had broken into the house; and that she had used certain expressions in identifying the defendant before them which it is argued were too vague for identification.

The evidence was confined to corroboration of Mrs. Bouldin's testimony on the trial. The gist of the objections made in this respect is that Mrs. Bouldin's testimony as to the main fact of the assault had not been challenged and, therefore, corroborative evidence was not admissible in its support.

There are two answers to this objection: First, if the defendant makes no question as to the commission of the crime but merely depends upon a want of identification of himself as the perpetrator, it is not apparent how he could be prejudiced as to corroboration of the occurrence; and, second, the statements of these two witnesses are so interwoven with the question of identification—which the appellant does challenge—as to repel any objection to its admission. Moreover the aid of corroboratory evidence is not as narrowly restricted as appellant suggests.

Mrs. Bouldin was subjected to a searching cross-examination which, of course, it was the duty of defense counsel to make, and it was calculated to raise the question of her credibility, whether directly or inferentially we need not inquire, and corroboration was not offensive to the suggested rule. *S. v. Parish,* 79 N. C., 610; *S. v. Rowe,* 98 N. C., 629, 4 S. E., 506; *S. v. Maultsby,* 130 N. C., 664, 41 S. E., 97; *S. v. Spencer,* 176 N. C., 709, 97 S. E., 155; *S. v. Gore,* 207 N. C., 618, 178 S. E., 209. Also see *S. v. Brabham,* 108 N. C., 793, 13 S. E., 217; *S. v. Bethea,* 186 N. C., 22, 118 S. E., 800; *S. v. Brodie,* 190 N. C., 554, 130 S. E., 205; *S. v. Scoggins,* 225 N. C., 71, 33 S. E. (2d), 473; *S. v Walker,* 226 N. C., 458, 38 S. E. (2d), 531.

In *S. v. Litteral,* 227 N. C., 527, 43 S. E. (2d), 84, the Court said:

". . . Her (prosecutrix) testimony was challenged and its credibility put at issue by the pleas of not guilty and by extended cross-examination. Hence the testimony of her mother that prosecutrix did not return home that night and she, the witness, so reported to the officers and the radio station was competent in support of her testimony . . ."

Exceptions are made to the mention of these matters in the judge's charge in the statement of the State's contentions; and to this the same reasoning applies.

On the evidence of Garner, who was admitted by the court to testify as an expert in the science of fingerprinting, the judge remarked: "The Court will allow the introduction of the fingerprint as found on the frame of the screen of the home of Mrs. Bouldin and also the fingerprints of defendant for the purpose of identification."

The appellant contends that this constitutes an expression of opinion to the jury (in violation of G. S., 1-180), that the pictures were actually made at the Bouldin house and that the fingerprints with which they were compared were taken from the defendant.

In reply to this the State points out that the remarks of the judge, reasonably considered, were intended only to identify exhibits which were admitted. Expressions comparable in factual similarity, and made in similar situations have not been held by the Court to constitute preju-

dicial error. *S. v. Cash,* 219 N. C., 818, 820, 15 S. E. (2d), 277; *S. v. Cureton,* 215 N. C., 778, 790, 3 S. E. (2d), 343; *S. v. Fain,* 216 N. C., 157, 158, 4 S. E. (2d), 319; *S. v. Bullins,* 226 N. C., 142, 144, 36 S. E. (2d), 915.

"In *State v. Cureton, supra,* this Court approved the following question put by the Court to a witness: 'When did he (defendant) shoot him (deceased) the last time?' "

"In *State v. Cash,* 219 N. C., 818, 820, this Court approved the following remarks made by the judge to counsel for defendant in answer to his argument directed to the competency of certain evidence: 'I am against you on that.' This Court held that this remark 'amounted to no more than a ruling upon the evidence.' "

"In *State v. Fain,* 216 N. C., 157, 158, this Court approved the following comment of the Court upon the defendant's confession as evidence: 'which the court has held to be competent in this case because it appears that the confession was taken without hope of reward or without any extortion or fear, and that it was fairly taken after the prisoner had been duly warned of his rights.' In approving this comment, the Court said: 'This did not constitute an expression of opinion, such as is prohibited by C. S., 654, for the judge said no more than that the confession had been duly admitted in evidence, and he gave his reasons for admitting it.' "

A further objection is made to the introduction in evidence of a cap found shortly after the occurrence in the living room of the prosecutrix and identified as that of defendant and to the reference to this evidence in the statement of the contention of the parties in the judge's charge.

The hat in question appears to have been picked up by Garner in the living room of the Bouldin house where the prosecutrix testified she was assaulted, and it was identified by the defendant's mother-in-law as being defendant's cap. This witness further stated that when he went out of the house in which they both lived that night he had the cap on and when he returned he did not have it. There was an inference from the evidence that when the officers arrived and took him in custody some while after the occurrence he did not have the hat. We do not find that the objection has any merit.

In stating the contentions of the State the court observed in reference to the fingerprint evidence:

"The State says and contends that this defendant is the man that committed the crime upon Mrs. Bouldin; that in his attempt to get out or into the house, that he pushed the screen of one of the win-

dows open, (and that fingerprints on the frame of the screen were taken by a man who is admitted to be an expert.)"

The appellant points out that the defense did not admit this witness to be an expert and that the form in which the contention is stated is prejudicial.

This exception, as several others noted above, is to a matter occurring in the array of the evidence and the statement of the contentions and comes under the general rule that to avail himself of the exception the defendant must have called the matter to the attention of the court at the time. *S. v. Dawson,* ante, 85, 89; *S. v. Warren,* 227 N. C., 380, 42 S. E. (2d), 350; *S. v. Thompson,* 227 N. C., 19, 40 S. E. (2d), 620.

Not only was this not done, but an opportunity was directly given to the defendant by the court to make the correction had he wished to do so and he did not avail himself of it.

We fully realize that we are dealing with a capital case, but the exceptive matter is not of such a character as to take it out of this rule, and the exception cannot be sustained.

The Court is unable to find sufficient reason to disturb the verdict. On the record we find

No error.