## STATE v. HUBERT TEW.

(Filed 12 December, 1951.)

**1. Criminal Law § 38d—**

Photographs of fingerprints and of the glass at the scene from which they were taken, and of other related objects, are competent for the purpose of explaining the testimony of the State's fingerprint expert witness.

**2. Criminal Law § 81c (3)—**

Testimony of the State's fingerprint expert that the fingerprints photographed by him were compared with those of defendant taken by some other person at a local prison camp cannot be held for prejudicial error as putting defendant's character in evidence when it appears that defendant on cross-examination brought out testimony that the fingerprints corresponded with many others of defendant that the officers had in their files, and further that testimony was admitted without objection that defendant had stated he had learned "after being arrested for different cases" to keep his mouth shut.

**3. Criminal Law § 52a (3)—**

Expert testimony to the effect that defendant's fingerprints corresponded with those taken at the scene of the crime, together with evidence tending to show that the prints found at the scene could have been impressed only at the time the offense was committed, *is held* sufficient to show that defendant was either the perpetrator or was present and participated in the commission of the crime, and therefore is sufficient to withstand motion to nonsuit.

APPEAL by defendant from *Sharp, Special Judge,* at August Term, 1951, of JOHNSTON.

Criminal prosecution upon bill of indictment, found by grand jury at said August Term, 1951, containing two counts charging, in substance, that on 12 January, 1949, defendant (1) did unlawfully, willfully and feloniously break and enter a certain dwelling house and building with intent to steal certain personal property of Mrs. P. T. George, and (2) did feloniously steal and carry away certain personal property of Mrs. P. T. George of the value of four hundred dollars then and there found, contrary to the statute, etc.

Defendant pleaded not guilty.

And upon the trial in Superior Court, the State offered testimony of Mrs. P. T. George and her daughter tending to show: That in January, 1949, Mrs. George was in service station business, with a place of business on road 701, thirteen miles from Smithfield, N. C.; that her home was in sight of, but some distance across the highway from the service station; that she carried a line of groceries in the service station; that she locked there, and left for her home about 6 or 6:30 o'clock on night of 13 January, 1949; that about 7:30 o'clock same night she and her daughter left home to visit a home in which a death had occurred, and, in returning about 11 o'clock, passed by the service station, and saw that the door to it was closed; that next morning, about 7 o'clock, pursuant to information received, she and her daughter went to the filling station and found that the upper part of the glass in the front door was broken out, apparently with a piece of iron seen nearby, and the building entered, and groceries and other property of the value of about $350.00 had been taken therefrom; that the glass had fallen on inside of the building; that the sheriff's department was notified, and pending the arrival of officers no one entered the building; and that officers came, and a representative of the S.B.I. arrived in about an hour and a half.

Mrs. George also testified: "I did not know the defendant at the time. I had not ever seen him before, as I remember . . . I stayed in my store every day along at the time of this robbery, without I would have to go to town and then I would get somebody to stay for me."

The State also introduced as a witness a representative of the State Bureau of Investigation, held by the court to be a fingerprint expert, who testified that he visited the scene of the alleged crime on 13 January, 1949, and processed broken glass found there for fingerprints.

His testimony, on direct examination, admitted over general objections by defendant, tends to show, summarily stated, that fingerprints described by him were lifted from the broken glass, and photographed; that when these prints were compared with fingerprints of Hubert Tew, previously taken by some other person, at a local prison camp, and then on file in

the files of the Bureau, they corresponded therewith, and that after defendant's arrest he, the representative of the Bureau, took other fingerprints from the hand of defendant, and same corresponded with the fingerprints lifted from the broken pieces of glass, and with those on file in the files of the Bureau.

Then this witness, under cross-examination, and without objection by defendant, testified in pertinent part: "As to whether I say I had some fingerprints of this man in my file at the time this crime was committed, yes Sir, he had been previously arrested for several other offenses. As to your not asking me what he had been previously arrested for, but whether I had the fingerprints of this man in my file up there, yes Sir, I do. I will be glad to tell the jury why I waited for three years when I say that these fingerprints are identical, before I came down here and asked for a trial of this cause; besides the fingerprints of the defendant we found also some fingerprints on a piece of jagged glass which were not the defendant's, so that we knew that there was another subject in the case, and after we learned that this defendant's fingerprints were identical with part of the fingerprints, we attempted then to get identification on the second subject who was in the case, and we never were convinced or been able to satisfy ourselves who the other person was. Therefore for that reason we finally brought this case to court and try only this one defendant in the case . . . I come down here and took his fingerprints for that purpose. I did not come down here today with the fingerprints which I had in that file up there at the time the crime was committed, of this man. I come down here with the photographs of the prints which I took of the defendant . . . up here in jail several days ago. I certainly am attempting to tell that jury that those fingerprints in my office up there are the same as the prints I took when he was in jail up there. The fingerprints which I developed, they are not only identical with the fingerprints which I took several days ago in the county jail, but they are identical with many other fingerprints we have of the defendant in our files . . . I don't understand the question of how many other fingerprints I compared this defendant's with in this particular case, those which I took off of the glass, and those I had in my file. I did not make any comparison with his fingerprints which I had in my file in Raleigh, and those which I took off of the glass, with the other 5,000 fingerprints I have testified I have taken; . . . I compared his prints with the prints which I developed from the glass . . . I had a conversation with this defendant in jail the day I come down here . . . I did not take the fingerprints that are in my office in Raleigh of the defendant. I know whether they are his fingerprints or some one else's; I compared those also . . . whether I don't have them here in court today either, no, Sir,

I have his criminal record, but I don't have his fingerprints, nor any of the ones that are on file . . ."

Then the witness, on re-direct examination, and without objection, continued: "There are more than five sets of the defendant's fingerprints in our files; I don't recall exactly how many. They were all together at the time of this alleged robbery in the files with the State Bureau of Investigation."

And then the witness, likewise without objection, stated: "I talked to the defendant in jail. When I asked him about the commission of this crime . . . he said 'I will keep everything I know to myself, and you keep everything you know to yourself . . . I have learned that after being arrested for different cases that it is best to keep your mouth shut.' "

A deputy sheriff, as witness for the State, corroborated the last witness as to statement by defendant. He also testified without objection that defendant, when arrested, "proclaimed his innocence"; and that since this case came up he had heard he had been in trouble and served some time on the roads.

The State introduced in evidence card containing fingerprints of defendant taken in jail; cards used by the expert to illustrate his testimony; and the lift used in preparation of fingerprints. Objection by defendant. Overruled. Exception.

Defendant moved for judgment as of nonsuit at the close of the State's evidence. The motion was overruled and defendant excepted.

Defendant offered no evidence.

Verdict: Guilty as charged in bill.

Judgment: On the count of house-breaking, confinement in Central Prison for a term of not less than 2 years and not more than 3 years; and, on the count of larceny, sentence of 18 months in the common jail of the county, and assigned to work the roads under the supervision of the State Highway and Public Works Commission,—the jail sentence being suspended on condition stated.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*E. R. Temple, Jr., and Jane A. Parker for defendant, appellant.*

WINBORNE, J. Appellant lists sixty-four assignments of error in the record on this appeal, of which thirty are based upon exceptions to the admission of evidence, and twenty-five or more upon exceptions to the charge of the court,—covey shots, so to speak. Upon these, ten questions are stated in brief of appellant, as being involved. We find, however,

upon careful consideration, that only a few of them require express treatment.

1. Defendant in his brief contends that the court erred in admitting into evidence "pictures of the glass, fingerprints and other objects in explanation of the testimony of the witness," the fingerprint expert. This contention is based upon numerous exceptions. It is without merit.

While the decisions of this Court uniformly hold that in the trial of cases, civil or criminal, in this State, photographs may not be admitted as substantive evidence, *Honeycutt v. Brick Co.,* 196 N.C. 556, 146 S.E. 227; *S. v. Perry,* 212 N.C. 533, 193 S.E. 727, the decisions hold that where there is evidence of the accuracy of a photograph, a ·witness may use it for the restricted purpose of explaining or illustrating to the jury his testimony relevant and material to some matter in controversy. See *S. v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824, citing cases.

Among the cases there cited is *Elliott v. Power Co.,* 190 N.C. 62, 128 S.E. 730, in which this Court said: "Plaintiff excepted because certain pictures were submitted to the jury. All of these pictures were used to explain the witnesses' testimony to the jury. It was not error for the court to allow the jury to consider the pictures for this purpose and to give them such weight, if any, as the jury may find they are entitled to in explaining the testimony."

Defendant cites and relies upon *S. v. Hooks,* 228 N.C. 689, 47 S.E. 2d 234, and *S. v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908. It does not seem, however, that the decisions in these cases are in conflict with the principles hereinabove stated.

2. The next group of assignments of error treated in defendant's brief is based upon exceptions to testimony of the representative of the State Bureau of Investigation, the fingerprint expert, given on direct examination as to comparison of fingerprints lifted from the broken glass at the scene of the alleged crime, and photographed by him, with fingerprints of Hubert Tew, the defendant here, taken by some other person, at a local prison camp, and then on file in the files of the Bureau, and that they corresponded. It is noted that when the testimony was admitted, defendant entered a general objection. But in the brief of defendant the .objection is expressly limited to the effect of the testimony, that is, that, by the admission of it, "defendant's character was placed in issue . . . without legal justification." It is contended that by this testimony the jury was informed that defendant had previously served in a prison camp—which had the effect of bringing his character in issue.

The well settled rule, as restated by *Denny, J.,* in *S. v. Godwin,* 224 N.C. 846, 32 S.E. 2d 609, that when incompetent evidence is admitted over objection and the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost;

but, as stated by *Brogden, J.,* in *Shelton v. R. R.,* 193 N.C. 670, 139 S.E. 232, "The rule does not mean that the adverse party may not, on cross-examination, explain the evidence, or destroy its probative value, or even contradict it with other evidence, upon peril of losing the benefit of his exception."

Applying this rule, as so interpreted, to the situation in hand, if it be conceded that the testimony to which objection was made is objectionable, testimony to the same effect was brought out on cross-examination. Moreover, it appears that the cross-examination was not kept within the bounds of the rule as above stated. It developed testimony that the State Bureau of Investigation had five sets of fingerprints of defendant in its files. And, indeed there is testimony, admitted without objection, that defendant stated that he had learned "after being arrested for different cases that it is best to keep your mouth shut." Hence on this record these assignments of error fail to show prejudicial error.

3. The assignment of error based upon exception to denial of defendant's motion for judgment as of nonsuit was properly overruled. *S. v. Huffman,* 209 N.C. 10, 182 S.E. 705; *S. v. Combs,* 200 N.C. 671, 158 S.E. 252; *S. v. Helms,* 218 N.C. 592, 12 S.E. 2d 243.

It is well established that evidence of the correspondence of fingerprints found at the scene of an alleged crime with those of an accused person, when given by a fingerprint expert, is admissible to prove the identity of the perpetrator of the offense. See *S. v. Combs, supra; S. v. Huffman, supra; S. v. Helms, supra; S. v. Hooks, supra.* See also 20 Am. Jur. 329, Evidence, Sec. 357; 23 C.J.S. 755, Criminal Law, Secs. 876, 877, 878; Rogers on Expert Testimony, 3rd Ed. (Werne), Sec. 88; Wigmore on Evidence, 3rd Ed., Section 414; N. C. Evidence by Stansbury, Sec. 86 and Sec. 134; see also Annotations 16 A.L.R. 370; 63 A.L.R. 1324.

In *S. v. Huffman, supra,* this Court said: "The testimony of the fingerprint expert was competent as evidence tending to show that defendant was present when the crime was committed and that he at least participated in its commission," citing *S. v. Combs, supra.*

And in *S. v. Helms, supra,* it is stated that evidence of fingerprint identification, that is, proof of fingerprints corresponding to those of the accused, found in a place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed, may be sufficient to support a conviction in a criminal prosecution. 20 Am. Jur. pp. 329 and 1076.

In the light of these principles the testimony of the fingerprint expert tending to show that fingerprints found at the scene of the crime correspond with those of defendant, taken after his arrest in this action, coupled with the testimony of Mrs. George tending to show that, though she personally attended her service station, she did not know, and had not

seen defendant before the date of the crime, is sufficient to take the case to the jury and to support a finding by the jury that defendant was present when the crime was committed and that he, at least, participated in its commission. *S. v. Huffman, supra.*

4. The assignments based upon exceptions to the charge, upon careful consideration, fail to point out prejudicial error.

5. Other assignments of error have been given due consideration, and fail to disclose reason for disturbing the judgment on the verdict rendered by the jury.

No error.