STATE v. JAMES CHARLES SMITH.

(Filed 14 June 1968.)

**1. Criminal Law § 60—**
　　To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time the crime was committed.

**2. Larceny § 6—**
　　Circumstantial evidence, if not too remote, is admissible to prove larceny.

**3. Larceny § 7—**
　　Evidence of the State tending to show that while shopping the prosecuting witness discovered that a $20 bill was missing from her wallet, that the wallet had been in a drawer of her desk that morning, that after $41 disappeared from her desk drawer a week later, defendant's finger-

print was found on her wallet, *is held* insufficient to be submitted to the jury on the issue of defendant's guilt of larceny of the $20 bill, there being no evidence that the money was stolen and there being no evidence tending to show that defendant's fingerprint could only have been impressed on the wallet at the time the $20 was allegedly stolen.

ON *certiorari* from *Bickett, J.,* August 1967 Regular Criminal Session of WAKE.

Criminal prosecution on an indictment containing two counts. The first count charges defendant on 8 April 1966 with the larceny of $20 in U. S. currency, the property and moneys of Elizabeth H. Keith, and the second count charges defendant at the same time and place with feloniously receiving the said $20, the property of said Elizabeth H. Keith, well knowing that theretofore it had been feloniously stolen, taken, and carried away.

This criminal action was initiated in the city court of Raleigh by trial on a warrant. At this trial defendant was adjudged guilty and sentenced to imprisonment for four months — said sentence to begin at the expiration of the sentence he was then serving for forgery having been convicted of the same in Halifax County on 7 December 1965. From the judgment defendant appealed to the Superior Court where he was tried upon the aforesaid indictment. In the Superior Court he was represented by William T. McCuiston, his privately employed counsel. Upon his trial in the Superior Court he pleaded not guilty. Verdict: Guilty of larceny as charged.

From a judgment of imprisonment for two years, he appealed. He did not perfect his appeal to the Supreme Court. On 18 September 1967 he filed an affidavit of indigency with Judge Bickett stating that when he was sentenced in the Superior Court he was financially unable to employ counsel. Whereupon, he requested the court to appoint counsel for him to apply for *certiorari* to the Supreme Court. Mr. Garland B. Daniel, the lawyer appointed by Judge Bickett to represent defendant, filed a petition in this Court for a writ of *certiorari* which we allowed 28 November 1967. The defendant has had his case on appeal mimeographed and his brief prepared for him by his lawyer, Mr. Daniel, like all solvent defendants.

*Attorney General T. W. Bruton and Deputy Attorney General James F. Bullock for the State.*

*Garland B. Daniel for defendant appellant.*

PARKER, C.J. Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of the State's evidence. The defendant offered no evidence.

The State's evidence tends to show the following facts:

On 8 April 1966 Mrs. Elizabeth H. Keith was employed by the State Highway Commission. Her office was next door to the office of her supervisor. About 8:30 a.m. on the same day she went into her supervisor's office to take dictation. The supervisor then closed the door that separates the two offices. The front door to Mrs. Keith's office that leads into the hallway stays closed all the time. It has a glass door but one cannot see through it. One can hear the door open and shut. She does not recall hearing that door make any noise while she was in the supervisor's office taking dictation. She does not recall seeing defendant that morning between 8:30 and noontime. There was a $20 bill and a $10 bill in her wallet which was in her pocketbook which she had left in her office in the desk drawer underneath the typewriter. She finished taking dictation about 12 o'clock noon, about which time she left and went to Efird's Department Store. She bought something at Efird's for one of her sons. She cannot remember what it was. She paid cash for it and used the $10 bill. Just after she had left Efird's and gone down the street, she missed the $20 bill. She ran back and asked the clerk what she had given him, if she had given him a $10 bill, and he said yes. It scared her when she found the $20 bill was missing. She thought she had dropped it out when she pulled out the $10 bill, and she and the clerk looked on the floor and elsewhere but could not find the $20 bill. She ran back to where she worked and told them she had lost a $20 bill. She told Mrs. Daniels, a secretary in the same office whose desk is situated beside hers, that she thought she had lost a $20 bill.

In response to the question as to what she did between Friday, the 8th, and Friday, the 15th, she testified as follows: "In between I just thought I had lost the $20.00 bill and didn't do anything about it, but on the 15th I had $41.00 to disappear right out of my desk drawer and that is when the SBI man was called in." On 15 April 1966 she said the following to Mr. Stephen R. Jones, the SBI agent: "I had had $41.00 to get gone; $20.00 to get gone on the 8th, and $41.00 on the 15th." The $41 was just lying loose in the middle drawer of the desk.

Between 8 April and 15 April 1966 she saw defendant James Charles Smith. He was an employee of the State Highway Department and emptied the trash can in the office daily. Her trash can was right behind her desk and about three feet from it.

Stephen R. Jones, who is Supervisor of Identification and Photography at the State Bureau of Investigation in Raleigh, had previously been employed by the Federal Bureau of Investigation for two years and nine months. He has had extensive classroom train-

ing in the field of fingerprinting, and has a considerable background in and knowledge of fingerprint identification. He has been employed in such work by the State Bureau of Investigation for four years, eight months, and twenty-one days. At this point in the testimony it was stipulated by counsel that Mr. Jones is an expert in the field of fingerprinting. He examines for identification and comparison an average of 1800 latent fingerprint lifts per month. Fingerprint lifts are fingerprints that are lifted for identification and comparison. They are usually given an application which is usually applied with a camel-hair brush at the scene of the crime. These prints are composed of a mixture of 98 per cent water and approximately 2 per cent body oils. On 15 April 1966 he was called to the office of the Assistant Controller of the State Highway Commission to make an examination of the desk in the office of Mrs. Elizabeth H. Keith and of her wallet. He processed the center drawer and outside of the desk on its glass top and came up with negative results. He made an examination of Mrs. Keith's wallet, which is marked State's Exhibit No. 1. He processed a note pad in the wallet. He processed both sides of this wallet except that he did not attempt to process the rough leather because it is not of an acceptable quality surface. The plastic parts of the wallet were acceptable as quality surfaces from which to lift latent prints. He lifted a print from a piece of note paper and compared the prints so as to identify the person who had made the print, and the print on this piece of note paper was identified by him as the thumb print of Mrs. Keith. He lifted three latent prints of value from the plastic surface of the wallet for identification purposes.

Since 15 April 1966 Mr. Jones has had occasion to take fingerprint samples from the defendant. He testified:

". . . I took the defendant's fingerprints the 7th month, 11th day, 1967, in the back of this courtroom. Mr. Harry M. Smith and myself had previously taken his prints on the 5th month, 3rd day, 1966. I made a comparison of the prints of the defendant which I obtained on the 11th day of July, 1967, with the latent prints which I lifted from the wallet of Mrs. Elizabeth H. Keith on the 15th day of April, 1966.

"I have an opinion satisfactory to myself and it is my opinion that one of three latent prints, of value for identification purposes, lifted from the plastic folder of this wallet, was made by the right thumb, representing this position here on this latent print here lifted, was made by the one and the same James Charles Smith. I was able to identify the other prints so lifted. One of them was identified as being the number 3, the right

middle finger of Mrs. Elizabeth H. Keith, and the other one was identified as being the right thumb or the number 1 finger of Mrs. Elizabeth H. Keith. There was two other prints but they were of no value for identification purposes. I lifted the prints from the wallet on the 15th day of April, 1966, and I took the fingerprint of the defendant on the 11th day of July, 1967.

"The article handed me marked for identification as State's Exhibit No. 2 is a white surface containing an inked impression of the right thumb print of James Charles Smith which I took on July 11, 1967. (State's Exhibit No. 2 was offered and received in evidence.)

                    *        *        *

"The basis of my comparison of this latent print I lifted with the print of the defendant's fingers were four basic points of identification which we use. They are known as Galton points of identification, Ending Ridge, Bifurcation, Ridge Dot, Ridge Island, have to do with these ridges which can be seen on them; some of these ridges flow evenly and some split and come back into one ridge, and these are the points that I used to make my comparison and identification. I compared these points that I refer to on these two State's Exhibits 2 and 3 and in doing so I became convinced that they were made by one and the same finger.

" (Witness goes to the jury box and points out some of the points of comparison on the prints.)

"In studying these prints, we use a five-powered magnifying glass to pick out the points of comparison and, as a general rule, I do not go into Court without at least twelve points of identification, and while in this case I do not recall just how many points of identification I did have, however, I know that there were more than twelve."

Mr. Jones testified on cross-examination that there were several fragmentary prints in this billfold wherein there were not sufficient points to make an identification of anyone. This wallet, State's Exhibit No. 1, was given to him on 15 April 1966; and, as far as he knows, the defendant's print could have been put on it anytime after 8 April 1966. He did not testify in any way as to when this latent print identified as defendant's was put on there. He just testified as to the identity of it. A latent print could stay on an article used daily for a full week or more, four or five weeks, if it had not been smeared or erased. He said on redirect examination that the finger-

print which he identified as a latent fingerprint left by the defendant was unsmeared, and he made a positive identification of it as being made by James Charles Smith.

"To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed." Anno: Evidence — Finger, Palm, or Footprint, 28 A.L.R. 2d 1115, 1154, § 29. See also *S. v. Combs*, 200 N.C. 671, 158 S.E. 252; *S. v. Huffman*, 209 N.C. 10, 182 S.E. 705; *S. v. Helms*, 218 N.C. 592, 12 S.E. 2d 243; *S. v. Palmer*, 230 N.C. 205, 52 S.E. 2d 908; *S. v. Tew*, 234 N.C. 612, 68 S.E. 2d 291; 29 Am. Jur. 2d, Evidence, § 375; 30 Am. Jur. 2d, Evidence, § 1144; 3 Wharton's Criminal Evidence, 12th Ed., § 982, p. 480.

It is well-settled law that circumstantial evidence, if not too remote, is admissible to prove larceny. *S. v. Mihoy*, 98 N.H. 38, 93 A. 2d 661, 35 A.L.R. 2d 852; Underhill's Criminal Evidence, 4th Ed., Larceny, § 505, p. 1022.

The warrant and the indictment both charge defendant with the larceny of $20 in money, the property of Elizabeth H. Keith, on 8 April 1966. Defendant is not charged with, and is not on trial for, the larceny of any part of the $41 in money, the property of Elizabeth H. Keith, which the State's evidence tends to show was stolen from her desk in the State Highway Commission building on 15 April 1966.

The State's evidence tends to show the following facts: On 8 April 1966 Elizabeth H. Keith, an employee of the State Highway Commission, had a $20 bill and a $10 bill in her wallet which was in her pocketbook in a desk drawer underneath the typewriter in her office when she went into the adjoining office of her supervisor to take dictation. She finished taking dictation about 12 o'clock noon, about which time she left and went to Efird's Department Store. She carried her wallet and pocket book with her. She bought something at Efird's, paid cash, and used her $10 bill. Just after she had left Efird's and had gone down the street, she missed the $20 bill. She ran back and asked the clerk what had she given him, if she had given him a $10 bill, and he said yes. It scared her when she found the $20 bill was missing. She thought she had dropped it out of her wallet when she pulled out the $10 bill, and she and the clerk looked on the floor and elsewhere but could not find the $20 bill. She went back to where she worked and told them she had lost a $20 bill. She told Mrs. Daniels, a secretary in the same office whose desk is situated beside hers, that she thought she had lost a $20 bill.

In response to the question as to what she did between Friday, the 8th, and Friday, the 15th, she testified as follows: "In between I just thought I had lost the $20.00 bill and didn't do anything about it, but on the 15th I had $41.00 to disappear right out of my desk drawer and that is when the SBI man was called in." It is true a witness for the State who is a fingerprint expert took fingerprints from Mrs. Keith's wallet on 15 April 1966, and that he took the fingerprints of defendant on 3 May 1966 and on 11 July 1966, and testified that he found on this wallet a fingerprint of the defendant. There is no evidence to show when defendant handled the wallet of Mrs. Keith to make the fingerprint. If, as the State contends, defendant opened her wallet and took $20 in money on 8 April 1966, it is unrealistic to believe or to infer that with a $20 bill and a $10 bill in her wallet, he would have taken the $20 and left the $10 bill in the wallet. Mrs. Keith has not sworn that the $20 in currency that she missed was stolen. Her evidence tends to show that she thought it had been lost out of her wallet. If she was not willing to swear that the $20 in money had been stolen, it would be unreasonable to hold that the State has produced sufficient evidence of the larceny of the $20 on 8 April 1966, as charged, to carry the case to the jury. Considering all the facts the State has no evidence tending to show that the fingerprint of defendant found on Mrs. Keith's wallet could only have been impressed at the time the $20 in money was allegedly stolen from her wallet on 8 April 1966. The State's evidence, considered in the light most favorable to the State and giving to it every reasonable inference to be drawn therefrom, fails to show any evidence tending to show that defendant stole $20 in cash belonging to Mrs. Keith from her wallet on 8 April 1966.

What is said in *S. v. Mullinax,* 263 N.C. 512, 139 S.E. 2d 639, is applicable here:

"The motion for nonsuit on the larceny count should have been allowed. There is no evidence that Lenoir Country Club, Inc., found any money to be missing or had any money in the building. . . . There is simply no evidence that any money belonging to it has been stolen. The State failed to prove the larceny as alleged."

The court erred in overruling the motion for judgment of compulsory nonsuit. The judgment of the court below is
Reversed.