UNITED STATES of America, Appellee,

v.

Raeford Melano CAUDLE, Appellant.

UNITED STATES of America, Appellee,

v.

Frank Lee BRASWELL, Appellant.

UNITED STATES of America, Appellee,

v.

Pat BRASWELL, Appellant.

UNITED STATES of America, Appellee,

v.

Roger Allan PIERCE, Appellant.

UNITED STATES of America, Appellee,

v.

Joseph Gorrell PIERCE, Appellant.

UNITED STATES of America, Appellee,

v.

James C. TALBERT, Appellant.

Nos. 83–5236 to 83–5241.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1984.

Decided April 3, 1985.

William A. Parker, Asheville, N.C., James B. Craven, III, Durham, N.C. and H. Marshall Simpson, Greensboro, N.C. (Juanita H. Blackman, Buies Creek, N.C., on brief), for appellants.

Jerry W. Miller, Asst. U.S. Atty., Asheville, N.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C., on brief), for appellee.

Before WIDENER and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WIDENER, Circuit Judge:

Raeford Melano Caudle (Caudle), Frank Lee Braswell (Frank Braswell), Pat Braswell, Roger Allan Pierce (Roger Pierce), Joseph Gorrell Pierce (Gorrell Pierce), and James C. Talbert (Talbert) were convicted of conspiracy to use explosives to damage or destroy buildings used in interstate commerce in violation of 18 U.S.C. §§ 371 and 844(i). Gorrell Pierce, Frank Braswell, and Caudle were sentenced to five years' imprisonment and fined $10,000. The remaining defendants were sentenced to three years, placed on probation, with their prison sentences suspended, and fined $1000. All six defendants appeal their convictions. Caudle and the Braswells are represented by counsel before this court. The remaining defendants appeal pro se.

These defendants were jointly tried for criminal conspiracy in July 1981. That trial ended in a hung jury, and a mistrial was declared. The defendants were then retried in September 1981 and all of the defendants were found guilty. This court vacated those convictions and remanded for a new trial. *United States v. Talbert*, et al, 706 F.2d 464 (4th Cir.1983). There, we held that the trial court had not erred in its refusal to suppress certain wiretap evidence and in its refusal to grant defendants' Rule 29 motion for judgments of acquittal on the ground that the evidence was insufficient to support the conspiracy convictions. We found error, however, in the trial court's refusal to order the government to provide the defendants with a free transcript of their first trial.

The defendants were then tried for a third time in September 1983. Again, a jury found all six defendants guilty.

In late 1979, Special Agent Michael Sweat, of the Bureau of Alcohol, Tobacco and Firearms, began an investigation of Frank Braswell upon receiving information that Braswell possessed illegal firearms through his membership in the North Carolina faction of the National Socialist Party of America (the Nazi party). Sweat contacted Braswell, using the undercover identity of Major Michael Swain, a former Special Forces officer turned mercenary.

During the period of time of Sweat's contacts with Braswell, an unrelated criminal trial began in the state criminal court in Greensboro, N.C. In that trial, six Ku Klux Klan-Nazi Party members were

charged with murder arising out of a shootout between Klan-Nazi members and members of the Communist Party. Through the Braswell connection, Sweat learned that Braswell and the other defendants were planning to destroy various businesses in Greensboro by use of explosives following an expected guilty verdict in the Klan murder trial there. Braswell sought Sweat's advice regarding the planned attacks and introduced Sweat to the other defendants.

Over the course of the following weeks, Sweat met with various members of the conspiracy.[1] Additionally, Sweat met with the Braswells or spoke to them over the telephone numerous times. At these meetings the group detailed their plans for the destruction in Greensboro. They outlined that their targets were to be a shopping mall, chemical plant, fertilizer plant and gasoline storage facility. They discussed the explosives they planned to use and how they would be detonated. Frank Braswell noted that he had the dynamite. Sweat was questioned regarding the proper procedure and ingredients for making napalm, which the defendants also planned to use. Sweat was to provide safe passage out of the country for the three to five people to be used in the attack. The group discussed the paperwork needed for getting the men out of the country and possible escape plans. The group met in various locations, including the Braswells' home, the Smith-Reynolds Airport in Winston-Salem, N.C., and the Spruce Pine Airport in Avery County, N.C.[2] In October 1980, Frank Braswell received information that the FBI might be aware of their plans for Greensboro, which caused the group to postpone their operation.

Pursuant to a court order, the government placed a wiretap on the Braswells' telephone. Conversations from the wiretap detailing the scope of the conspiracy were also introduced at trial.

The murder trial in Greensboro resulted in the acquittal of all of those defendants. These defendants' planned attack on Greensboro was never carried out.

■ Initially, we must consider whether the trial judge erred in refusing to appoint counsel for Talbert and Roger Pierce pursuant to 18 U.S.C. § 3006A. With the exception of Pat Braswell,[3] the defendants were represented by court appointed counsel during their first two trials (Frank Braswell proceeded a part of the time without an attorney, having signed a waiver). Prior to the third trial, Gorrell Pierce,[4] Pat Braswell and Frank Braswell waived their rights to be represented by counsel. All three have since proceeded pro se. Caudle was found to be unable to afford counsel and had appointed counsel to represent him in the third trial. Talbert and Roger Pierce also sought to have counsel appointed for them, and filed the necessary financial statements. Talbert's affidavit revealed that he earned $1000 per month as a truck driver and that his wife earned $450 per month. Roger Pierce's affidavit revealed that he earned $300 per week doing construction welding. From these statements, the magistrate concluded that neither man was financially unable to obtain counsel. We cannot say that his findings were clearly erroneous. *United States v. Harris*, 707 F.2d 653 (2d Cir.1983).

■ Appellants charge error in the district court's denial of their motion for acquittal under F.R.Cr.P. 29 on the ground

1. Special Agent Jill Arthurs of the North Carolina State Bureau of Investigation attended some of the meetings with Sweat, posing as his girlfriend and business associate.

2. The undercover agents secretly recorded many of the group's conversations.

3. Pat Braswell had court appointed counsel during her first trial. She waived counsel for her second trial.

4. Gorrell Pierce had sought to have counsel appointed for him prior to his third trial. That request was denied. He then waived counsel. While the refusal to appoint counsel for Pierce is not specifically challenged on appeal, we have reviewed his financial statement and find that it supports the ruling that he was able to obtain counsel.

of insufficiency of evidence and the submission of the case to the jury. They argue that the evidence does not support the verdicts. We must sustain the jury's verdict if there is substantial evidence based upon the evidence as a whole and viewed in the light most favorable to the government to uphold the jury's decision. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). To sustain a conviction for conspiracy under § 371, the government must prove an agreement or understanding between two or more persons to commit a criminal act and an overt act by one of the coconspirators in furtherance of the conspiracy. *United States v. Anderson*, 611 F.2d 504 (4th Cir.1979). The agreement can be inferred from the facts and circumstances of the case. It is sufficient if the circumstances reveal two or more persons acting in concert to commit a criminal act. *United States v. Laughman*, 618 F.2d 1067 (4th Cir.1980). The evidence must also reveal that each defendant knew of the agreement and in some way expressed his participation in the scheme. The government need only prove one overt act listed in the indictment to sustain a conviction. *Anderson*, supra at 510.

 The government's response to the claim that the evidence does not support the verdicts is that the defendants are estopped to assert the insufficiency of evidence at this time. Thus, the government says the "evidence in this trial, as in the two previous trials, consists of [etc]." The argument goes that the previous decision of this court, reported at 706 F.2d 464, in 1983, considered the sufficiency of the evidence and decided that question adversely to the defendants. With this background, the sought-for conclusion is that the question is not open at this time. We disagree. In the 1983 decision we concluded that the evidence at the second trial supported the

convictions, but the judgments of conviction were vacated and the case remanded for a new trial. The fact that the evidence may have supported the verdicts in the second trial does not decide whether or not the evidence in the third trial supports the verdicts. See *United States v. Levy*, 703 F.2d 791, 792 n. 2 (4th Cir.1983). The sufficiency of the evidence in the retrial of a criminal case is a question in each instance to be submitted to a jury, subject only to being set aside for insufficiency. Our previous decision that the evidence was sufficient in the second trial is not the law of the case here. See *Metheany v. United States*, 390 F.2d 559, 560–61 (9th Cir.1968). So, we must consider whether or not the evidence is sufficient to support the verdicts in the third trial, although, as the government implies, it is essentially the same as that in the second trial.

 Viewing the evidence in the light most favorable to the government, we think there is sufficient evidence in the record to support the convictions for conspiracy to use explosives to damage or destroy buildings used in interstate commerce. The evidence reveals that on several occasions all of the defendants gathered together to discuss their plans for Greensboro. The defendants also met frequently in smaller groups to discuss plans for the bombing. It is plain that an agreement or understanding existed among all of the defendants to bomb the several establishments in Greensboro.

 There is also sufficient evidence in the record to show an overt act performed in furtherance of the conspiracy. The government at least proved the existence of Overt Act Four in the indictment.[5] The evidence at trial showed that Agent Sweat and an Agent Reese[6] flew to the Spruce

**5.** Overt Act Four reads: "On September 16, 1980, the defendant Frank Lee Braswell met with the undercover agent at the Spruce Pine Airport in Avery County within the Western District of North Carolina and flew to Smith-Reynolds Airport in Winston-Salem within the Middle District of North Carolina where he introduced the agent to Joseph Gorrell Pierce and

James C. Talbert. On said occasion the defendant Joseph Gorrell Pierce asked the agent how much money they would need for the agent's services in flying five people to South America."

**6.** Marshall Reese was a Special Agent with the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms.

Pine Airport and picked up Frank Braswell. The three men then flew to the Smith-Reynolds Airport in Winston-Salem. Once there, they met with Gorrell Pierce and Talbert and discussed their planned bombings. Transportation out of the country for those directly involved in the bombings was discussed at this meeting. It later developed that Agent Reese who piloted the plane that took Braswell to the Winston-Salem meeting was also to pilot the plane providing the out-of-the-country transportation for the terrorists. After flying with Reese, Braswell concluded that he was indeed a very capable pilot. Braswell's flying with the agents and negotiating with a pilot to provide the escape of those who were to perform the bombings is we think an overt act in furtherance of the conspiracy. Since the convictions may be upheld based on Overt Act Four, we need go no further to decide the sufficiency of the evidence to support other overt acts listed in the indictment.

▆▆▆ Defendants claim error in the trial court's admission of out of court statements of coconspirators without a pretrial hearing to first determine the existence of a conspiracy. While the admissibility of such statements made in furtherance of the conspiracy depends upon the existence of substantial evidence of a conspiracy other than the statements themselves, this court has never required a pretrial determination of the existence of a conspiracy. *United States v. Hines*, 717 F.2d 1481 (4th Cir. 1983). The evidence at trial of the existence of a conspiracy was sufficient to support the admission of the statements. We find no error in the court's admission of the statements which are not hearsay pursuant to Fed.R.Evid. 801(d)(2)(E).

We find the remaining arguments that the trial court erred in admitting certain wiretap and taped evidence likewise to be without merit.

The judgments of conviction are accordingly

AFFIRMED.