814 F.2d 655
Unpublished Disposition
 UNITED STATES of America, Appellee,
v.
Elijio BRICENO, Appellant.
 No. 85-5239.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 13, 1986.
Decided March 12, 1987.
 
 Before WIDENER and CHAPMAN, Circuit Judges and MAXWELL, District Judge ATl Michael Roger Mitwol, on brief, for appellant.
 Samuel T. Currin, U.S. Atty., on brief, for appellee. for the Northern District of West Virginia, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 Elijio Briceno appeals his convictions of conspiracy to import controlled substances into the United States and using a communication facility in furtherance of a felony. He claims that his convictions by trial in the U.S. District Court for the Eastern District of North Carolina were void because he had never been in the district and he did not have sufficient contacts with the district to support venue. He also challenges the sufficiency of the evidence. Finding no merit in his convictions, we affirm.
 
 
 2
 During 1984, special agent Robert W. Ridler, an eleven year veteran with the Drug Enforcement Administration, was investigating illegal drug traffic in and out of Belize, a small country in Central America and once known as British Honduras. At the time Ridler was stationed in Merida, Mexico, and the information he accumulated revealed that Elijio Briceno, then the Minister of Energy and Communication of the Balizean government was involved in drug trafficking. Mr. Briceno's responsibilities as Minister of Energy and Communication included the overseeing of airstrips, airports, traffic and communications. Ridler arranged a meeting with Briceno on October 11, 1984 at the Hotel El Presidente in Chetumal, Mexico. At this meeting Elijio Briceno was in the company of his brother, Graciano Briceno, and his nephew, Renan Briceno, and those present discussed quantity, price and transportation of marijuana in excess of one thousand pounds. Elijio advised Ridler that at that time he did not have access to cocaine. Ridler explained that an aircraft would be used to transport the marijuana out of Belize and into the United States, and he was assured by Elijio that there would be no problem with police activity and that Ridler could deal with both his brother and his nephew in making arrangements.
 
 
 3
 Agent Ridler was being transferred from Mexico to Wilmington, North Carolina and gave the Bricenos a telephone number at which he could be reached in Wilmington. A number of telephone calls were made between the Bricenos and Ridler from November, 1984 to April, 1985 to discuss and plan the importation scheme. All of these calls were tape recorded and they are the subject of the numerous counts in the indictment relating to the use of a communication facility in furtherance of a felony.
 
 
 4
 On November 23, 1984, Ridler met Elijio Briceno and Graciano Briceno again at the El Presidente Hotel in Merida, Mexico to discuss the transportation of marijuana and to arrange for the use of an airstrip that could accommodate a DC-3. This type aircraft has the shortest runway requirements of any aircraft available to the DEA. Graciano stated that certain airstrips had previously been used for transportation out of Belize, but a DC-3 had not been involved in any previous loadings. One of the primary reasons for this meeting was to confirm the location of the airstrips. The telephone conversations had used a form of code, and it was not possible to express the map coordinates in such a conversation. At this meeting it was agreed that payment for the marijuana would be made at the time it was delivered to the plane and that delivery would be in either twenty or fifty pound bales. Elijio Briceno assured Ridler that there would be no problem with police or military activity in the area at the time of loading. This meeting was concluded with the understanding that the Bricenos would meet Ridler and Ridler's pilot, DEA agent Richard Vandiver on November 28 and drive them to Belize to check various airstrips.
 
 
 5
 At the appointed time Elijio and Renan Briceno picked up Agents Vandiver and Ridler in a pickup truck and drove them to the Mexican-Belize border. At this check point Elijio took the passports and identification papers of the two agents into the immigration house and assured them that he would make sure they did not have to surrender any documents or have any notation made thereon that they had left Mexico. Ridler observed Elijio give a quantity of pesos to the border official. The agents were not required to go through any type of customs or immigration procedure on the Belize side of the border. They drove directly to a clandestine airstrip which they found too narrow to accommodate a DC-3. The agents were then introduced to one Grajalez who took them to other clandestine airstrips and they tentatively agreed upon the use of Tower Hill Airport. Grajalez then showed them samples of the kind of marijuana they would be buying. A tentative date for delivery was set for November 30, but before this delivery it was found that Tower Hill was too small to accommodate a DC-3. On December 6, Agent Vandiver with other agents flew into Belize in an effort to locate an airstrip capable of handling a DC-3. They later chartered a small plane to look for adequate sites, and after several days advised Elijio Briceno that they had been unable to find an adequate airstrip.
 
 
 6
 On November 26, 1985, Elijio Briceno called Agent Ridler in Wilmington and advised him that cocaine was now available if Ridler was interested. Numerous telephone calls were made in February, March and April, 1985 to discuss the cocaine transaction. This transaction was to take place in Miami but on March 21, 1985, Elijio Briceno informed Ridler that his Miami source could not handle the transaction and that Ridler should come to Belize.
 
 
 7
 On April 8, 1985, Elijio Briceno and Ridler met at the Columbia Hotel in Miami, Florida and discussed the price of the cocaine, the amount of cocaine available, the marijuana, the security requirements in Belize and the fact that Briceno had with him a land contract which would be used to explain the cash he would have from the ten percent commission he would receive from the sale of the cocaine and the marijuana. At this point, Elijio Briceno was arrested by DEA agents. After the arrest Briceno advised Agent Ridler that he was disappointed to find him to be a policeman because he had trusted him. Briceno was given a Miranda warning and indicated he would like to cooperate with the agents. He was asked the name of the person who was going to provide the cocaine and he gave the agent a name, a telephone number, and attempted to reach this party by telephone. This attempt was unsuccessful.
 
 
 8
 An indictment was returned against Elijio Briceno, his brother, his nephew and Elyo Grajalez, but only Elijio was apprehended and stood trial. The defense moved to dismiss the indictment upon the grounds that the facts stated therein were not sufficient to constitute an offense against the United States and that the United States District Court for the Eastern District of North Carolina did not have jurisdiction to try the defendant.
 
 II.
 
 9
 Appellant contends that under Article III, Section II of the United States Constitution, Amendment VI to that Constitution, Title 18 U.S.C. Secs. 3237(a) and 3238, and Rule 18 of the Fed.R.Crim.P. he must be tried in the district of South Florida where he was first arrested.[1] Appellant contends that venue in the Eastern District of North Carolina was manufactured by Agent Ridler in an effort to have the case prosecuted in a district considered to be more friendly to the position of the United States than is the Southern District of Florida.
 
 
 10
 Appellant contends that the telephone communications by and between the DEA agents, himself and his brother and nephew were not such contacts with the Eastern District of North Carolina as would support venue. In making this argument appellant relies upon our holding in United States v. Levy Auto Parts of Canada, 787 F.2d 946 (4th Cir.1986). We do not find that Levy Auto Parts of Canada requires that venue in the present action is only proper in the Southern District of Florida. Levy involved a conspiracy originating outside the United States. The purpose of the conspiracy was to violate the Arms Export Control Act in procuring for exportation M60 tank engines by use of false certificates showing the destination of the engines to be Pakistan, when the engines were, under the conspiracy, to be delivered to Iran. One of the conspirators was arrested at Dulles International Airport in the Eastern District of Virginia and was indicted in that district with another alleged coconspirator, who resided in the District of Columbia. The Levy defendants contended that venue should have been laid in the Western District of Michigan because of an allegation in overt acts numbers 25 and 26 alleging that price information on the engines was requested and sent from the Western District of Michigan. Our court held that the district court erred in speculating that venue in the case might have been laid in the Western District of Michigan and in dismissing the indictment for lack of venue, because there was insufficient basis for a conclusion that venue under 18 U.S.C. 3238 in the Eastern District of Virginia was improper. The court held that the allegations contained in overt acts 25 and 26 were surplusage and were unnecessary, insubstantial and insignificant. However, in the present case the telephone calls to and from Elijio Briceno, his co-conspirators and the DEA agents are not simply overt acts of the two conspiracy counts, but make up eighteen substantive counts in the indictment of using a telephone in furtherance of a felony under 21 U.S.C. Sec. 843(b).
 
 
 11
 As early as 1912 the Supreme Court decided that overt acts performed in one district by one of the parties, who had conspired in another district, gave jurisdiction to the court in the district where the overt act was performed. Hyde & Schneider v. United States, 225 U.S. 347 (1912). See also United States v. Anderson, 611 F.2d 504, 509 n. 5 (4th Cir.1978).
 
 
 12
 Conspiracy is a continuing offense and in Armour Packing Co. v. United States, 209 U.S. 56 (1907) it was decided that where a continuing offense is committed in more than one district the VI Amendment does not preclude a trial in any of those districts. This rule has now been codified as 18 U.S.C. 3237(a).
 
 
 13
 The making and receiving of telephone calls within a district, which calls are overt acts in furtherance of a conspiracy, is sufficient to establish jurisdiction for the prosecution of the conspiracy in such district. United States v. Whitaker, 372 F.Supp. 154 (M.D.PA.1974) aff'd without opinion 503 F.2d 1400 (3rd Cir.1974), cert. denied, 419 U.S. 1113 (1975). See also United States v. Spiro, 385 F.2d 210 (7th Cir.1967); United States v. Strickland, 493 F.2d 182 (5th Cir.1974), cert. denied 419 U.S. 801 (1974); United States v. Lewis, 676 F.2d 508 (11th Cir.1982). Appellant argues that the DEA agent deliberately set out to manufacture jurisdiction in the Eastern District of North Carolina by giving him a telephone number to call in Wilmington, North Carolina. This argument might be appealing if all of the calls had been from the agent in the Eastern District of North Carolina to Briceno and his co-conspirators outside the district and outside the United States, but there were calls from the appellant outside the district to the telephone within the district, and tapes of all the telephone conversations show that such calls were in furtherance of the conspiracy to import controlled substances into the United States. The telephone call of February 26, 1985, from Elijio Briceno to the Wilmington telephone number is particularly important because in this call Briceno advised Agent Ridler that Briceno had access to cocaine. The trial court found as a fact that these calls were in furtherance of the conspiracy.
 
 
 14
 Appellant asserts that under 18 U.S.C. Sec. 3238 he should have been tried in the Southern District of Florida where he was first arrested. The clear language of the statute does not support this contention. Section 3238 covers "all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district ...". To give the court jurisdiction under this Section, the offense must be committed out of the jurisdiction of any district or state. The present facts show that overt acts and substantive offenses were committed in the Eastern District of North Carolina and 18 U.S.C. Sec. 3237(a) applies.
 
 III.
 
 15
 Appellant contends that there was not sufficient admissible evidence to support his convictions as to the conspiracy to import marijuana in excess of one thousand pounds, the conspiracy to possess cocaine with intent to distribute and the various counts of using a communications facility in furtherance of a felony. A guilty verdict must be sustained if there is substantial evidence to support the verdict, taking a view of all of the evidence most favorable to the prosecution. Glasser v. United States, 315 U.S. 60 (1942). The defendant was indicted on charges of conspiracy to import controlled substances into the United States in violation of 21 U.S.C. 963, and with using a communication facility in furtherance of a felony, in violation of 21 U.S.C. Sec. 843(b). The essential elements that must be proved beyond a reasonable doubt by the government on the conspiracy count are: (1) that two or more persons came to a mutual understanding to accomplish a common and unlawful plan, and (2) that the defendant knowingly and willfully became a member of the conspiracy. United States v. Sanchez, 722 F.2d 1501 (11th Cir.1984), cert. denied, --U.S. -- ( ). The essential elements required to be proved under 21 U.S.C. 843(b) are: (1) that the defendant used a communication facility, in this case a telephone, (2) that he used the telephone to facilitate the commission of a felony, and (3) that he did so knowingly and intentionally.
 
 
 16
 The evidence as to the use of the telephone has already been set forth in this opinion and is sufficient to establish the essertial elements of the crime of using a communication facility and facilitating the commission of a felony.
 
 
 17
 The testimony of three DEA agents established that the defendant was directly involved in a conspiracy to import controlled substances into the United States. The defendant, his co-conspirators, and Agent Ridler worked together from October, 1984 to April, 1985 to put into effect the plan to import marijuana in excess of one thousand pounds into the United States and from February 26, 1985 until Briceno was arrested in April, 1985 to import cocaine. The conspiracy was proved by the testimony of the various meetings and telephone conversations to plan such importation as well as field trips to secure a proper landing site for the aircraft to be used in the importation.
 
 
 18
 Appellant asserts that the court committed prejudicial error in allowing the admission of out of court declarations of alleged co-conspirators without first finding as a fact and concluding as a matter of law by a fair preponderance of independent evidence that appellant was a member of the conspiracy and participated therein. Defendant claims that this failure of the trial court violated his VI Amendment right to confrontation of the witnesses against him. Fed.R.Evid. 801(d)(2)(E) provides that a statement by a co-conspirator or a party during the course and in the furtherance of a conspiracy is not hearsay. In Ohio v. Roberts, 448 U.S. 56 (1980) the Supreme Court held that the introduction of hearsay statements against a criminal defendant did not violate the confrontation clause of the VI Amendment if (1) the government establishes that the declarant is unavailable and (2) the statements to be admitted bear sufficient indicia of reliability. The court held that reliability could be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In United States v. Chindawongse, 771 F.2d 840, (4th Cir.1985) we concluded that evidence admitted under Rule 801(d)(2)(E) had sufficient indicia of reliability and guarantees of trustworthiness to satisfy the confrontation clause.
 
 
 19
 In United States v. Hines, 717 F.2d 1481 (4th Cir.1983) we found that the admissibility of out of court statements by co-conspirators made during the course of and in furtherance of the conspiracy were admissible under the above hearsay exception, but their admissibility was dependent upon the existence of substantial evidence of the conspiracy other than the statement itself. In Hines we also held that the trial judge retained the option to admit conditionally the declarations of co-conspirators before the conspiracy had been independently established, subject to the subsequent proof of the conspiracy by other evidence.
 
 
 20
 The present case was tried to the bench and therefore the trial judge, being familiar with the Rules of Evidence and the essential elements of conspiracy, was in a position to admit testimony out of sequence, and he was not required to have the substantial evidence of the conspiracy presented prior to hearing the co-conspirators' statements, provided the required evidence of the conspiracy was later received.
 
 
 21
 Non-hearsay evidence of the conspiracy was supplied by admissions and declarations made by Elijio Briceno to the DEA Agent Ridler that he had access to marijuana and cocaine. The defendant also introduced the Agent to his co-conspirators, his brother and his nephew, and he advised the Agent that he could deal with both of these individuals in arranging for the importation. There was also the testimony of the trip from Mexico into Belize and the bribing of the border guard so that no notation of the crossing would be made upon Ridler's passport, and the numerous telephone conversations between the defendant and Ridler, which conversations were recorded and presented to the court. These statements and actions of the defendant clearly proved a conspiracy aliunde as required.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 United States Constitution, Article III, Section II provides in part:
 "The Trial of all Crimes, except in Cases of Impeachment, Shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."
 Amendment VI provides in part:
 "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury in the State and District where the crime shall have been committed ...."
 Fed.R.Crim.Pr. 18 provides "place of Prosecution and Trial.
 Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice."
 18 U.S.C. 3237(a) offenses begun in one district and completed in another.
 (a) Except as otherwise expressly provided by enactment of Congress any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
 Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves."
 18 U.S.C. Sec. 3238 offenses not committed in any district.
 The trial of any offense begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular state or district, shall be in the district in which the offender, or anyone of two or more joint offenders, is arrested or first brought; but if such offender or offenders are not so arrested or brought into any district! an indictment or information may be filed in the district of the last known residence of the offender or anyone of two or more joint offenders, or if no such resident is known the indictment or information may be filed in the District of Columbia."