818 F.2d 30
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff--Appellee,
v.
David Michael SCATES, Defendant--Appellant.
 No. 86-5621.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1987.
Decided May 6, 1987.
 
 Before RUSSELL and WILKINS, Circuit Judges, and TIMBERS, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.
 H. Gerald Beaver (Beaver, Thompson, Holt & Richardson, P.A., on brief), for appellant.
 Louis M. Fischer, Department of Justice (Samuel T. Currin, United States Attorney, on brief), for appellee.
 WILKINS, Circuit Judge:
 Defendant Scates appeals convictions of conspiracy to manufacture and possess with intent to distribute a controlled substance (Count I) and a violation of the Travel Act (Count II). 21 U.S.C.A. Sec.Sec. 841(a)(1), 846 (West 1981); 18 U.S.C.A. Sec. 1952(a) (West 1984). We affirm the conviction and sentence on Count I. The government concedes that the conviction and sentence on Count II, the Travel Act violation, should be vacated.
 
 I.
 
 1
 In 1982 Scott Douglass, an army sergeant assigned to the Fort Bragg dental clinic, was introduced to Scates by his neighbor, Donald Brown. Scates lived in Baltimore, Maryland, but he frequently visited Brown's Fayetteville, North Carolina home on weekends. Douglass and Scates became better acquainted during these visits.
 
 
 2
 In January or February of 1984 Scates offered Douglass $500.00 to pick up a shipment of pyrrolidine which Scates planned to order and have shipped to the dental clinic. Although Douglass had not been informed that the intended use of the pyrrolidine was to manufacture PCPy,[1] he suspected it would be used to produce some illegal drug. Douglass agreed to pick up the shipment and gave Scates several sheets of dental clinic stationery listing the proper shipping address.
 
 
 3
 On March 20, 1984 an order for 1,500 grams of pyrrolidine, typed on the dental clinic stationery, was placed with ICN Pharmaceuticals in Plainview, New York. The envelope containing the order was postmarked in Severn, Maryland and payment was in the form of a postal money order purchased in Severn. Severn is in close proximity to Scates' hometown of Baltimore, Maryland.
 
 
 4
 Several weekends after the initial conversation concerning pyrrolidine, Scates inquired as to whether the shipment had yet arrived. When Douglass responded that it had not, Scates requested that he "keep an eye out" for it.
 
 
 5
 In early April, 1984 a one-gallon bottle, approximately half-full of pyrrolidine, arrived at the dental clinic. The bottle was given to Douglass by his superiors who instructed him to determine who had ordered it. Disregarding these instructions, and in accordance with his agreement with Scates, he smuggled the bottle out of the clinic. Douglass then informed his superiors that the bottle was removed from his desk during his absence.
 
 
 6
 Douglass delivered the pyrrolidine to Scates who transported it to Baltimore. He told Douglass that he would return to Fayetteville the following weekend with his $500.00 payment. Scates returned as promised, but informed Douglass he did not have the money because he was attempting to make PCP and had "blown" a batch. When Scates indicated that he wanted to obtain more pyrrolidine, Douglass responded, "[I]t could be done, but you know, it wasn't positive that I would be able to get it. I wasn't sure how safe it would be coming in again so soon." Scates then stated "it was still worth a try."
 
 
 7
 In June, 1984, dental clinic stationery was again used to order 1,500 grams of pyrrolidine from ICN Pharmaceuticals, Inc. Douglass was on leave when this shipment arrived at the clinic, and its arrival triggered an official investigation. Douglass was questioned and denied any knowledge of the pyrrolidine. orders and shipments.
 
 
 8
 On January 4, 1985, a third bottle of pyrrolidine was ordered using dental clinic stationery, this time from Sigma Chemical Company in St. Louis, Missouri. The order was accompanied by a postal money order purchased in Baltimore and mailed from nearby Prince George's County. This shipment was also seized by army investigators when it arrived at the clinic.
 
 
 9
 Douglass was questioned again in May, 1985 and continued to disclaim any knowledge of the shipments. He informed Scates of the investigation and Scates told him not to worry because nothing could be proved. Shortly thereafter Douglass failed a polygraph examination. He then confessed his involvement and began to cooperate, attempting to set up a controlled delivery to Scates. Scates declined, however, stating "it just wasn't right."
 
 
 10
 Scates and Douglass were subsequently indicted, and Douglass testified for the government pursuant to a plea agreement.
 
 II.
 
 11
 Scates advances two primary issues on appeal. First, he argues the evidence was insufficient to sustain the Count I conspiracy conviction. Second, he objects to being sentenced in accordance with an increased penalty enacted as part of the Comprehensive Crime Control Act of 1984.
 
 
 12
 Scates maintains that there was no meeting of the minds between Douglass and himself after Douglass learned that the pyrrolidine was to be used to manufacture PCP. Scates focuses on the conversation in which he reported to Douglass that he had "blown" a batch of PCP and therefore did not have the $500.00 payment. Scates asserts that Douglass at this point expressed reluctance to continue and backed out of the transaction. However, as previously noted, Douglass actually said "[I]t [another shipment of pyrrolidine] could be done, but you know, it wasn't positive that I would be able to get it. I wasn't sure how safe it would be coming in again so soon."
 
 
 13
 It is well settled that this testimony must be viewed in the light most favorable to the government. United States v. Caudle, 758 F.2d 994, 997 (4th Cir. 1985). In so doing, we find Douglass' testimony was an expression of caution in proceeding so soon after the first shipment was discovered by his superiors. The testimony did not show that Douglass failed to agree to proceed merely because he positively learned that PCP was being manufactured. In fact, the evidence indicated that from the beginning Douglass suspected an illegal drug was involved; he was simply unaware of the exact substance being produced. There is no indication that Douglass withdrew because PCP, rather than some unknown illegal drug, was being manufactured.
 
 
 14
 Accordingly, we find the evidence sufficient to sustain the jury's verdict on Count I.
 
 III.
 
 15
 Scates' next contention is that a violation of the prohibition against ex post facto laws occurred when he received a 15-year sentence pursuant to 21 U.S.C.A. Sec. 841(b)(1)(B) (West Supp. 1986). U.S. CONST. art. I, Sec. 9, cl. 3. Prior to being amended as part of the Comprehensive Crime Control Act of 1984, Section 841(b)(1)(B) provided for only a 5-year sentence.
 
 
 16
 The question raised by Scates' argument is whether the conspiracy continued beyond October 12, 1984, the effective date of the increased sentence provision. Scates recognizes that if the conspiracy did continue beyond October 12, 1984, no ex post facto violation was occasioned by his sentence. United States v. Todd, 735 F.2d 146, 150 (5th Cir. 1984), cert. denied, 469 U.S. 1189 (1985). He argues, however, that the jury may have convicted him solely on the basis of events occurring prior to the effective date of the act.
 
 
 17
 We note that Scates at no time requested the district judge to submit this question to the jury. Furthermore, Scates' defense at trial consisted of an unsuccessful attack on Douglass' credibility. The jury's verdict of guilty evidenced its acceptance of Douglass' testimony indicating the conspiracy continued until May, 1985 when he began cooperating with authorities. Moreover, the evidence showed that the third shipment of pyrrolidine was ordered in January, 1985, well beyond the effective date of the provision under which Scates was sentenced. Consequently, we find no constitutional violation arising from the sentence imposed.
 
 
 18
 We have carefully reviewed Scates' remaining contentions and find them to be without merit. Accordingly, we affirm the conviction and sentence as to Count I, and pursuant to the government's concession, vacate the conviction and sentence as to Count II.
 
 
 19
 AFFIRMED IN PART; VACATED IN PART.
 
 
 
 [1]
 PCPy, or PHP, is similar both in chemical composition and in its effect on users to "true" PCP. The manufacturing process is also nearly identical, except pyrrolidine is used in PCPy and piperidine is used in PCP