UNITED STATES of America,
Appellee,

v.

Edward A. CORSO, a/k/a Edward A.
Manders, Appellant.

No. 14507.

United States Court of Appeals,
Fourth Circuit.

March 26, 1971.

Thomas J. Morris, Arlington, Va.
(court-appointed counsel), for appellant.

Justin W. Williams, Asst. U. S. Atty.
(Brian P. Gettings, U. S. Atty., on
brief), for appellee.

Before BOREMAN, WINTER and
BUTZNER, Circuit Judges.

PER CURIAM:

By order of January 18, 1971, this
court refused to consider defendant's di-
rect appeal from his conviction below
since defendant was then a fugitive from
justice, having escaped by force from
jail confinement. The order provided,
however, that should defendant submit
to the jurisdiction of the District Court
for the Eastern District of Virginia on
or before February 9, 1971, we would
entertain his appeal. We have been ad-
vised by the office of the United States
Attorney for the Eastern District of Vir-
ginia that on February 1, 1971, defend-
ant voluntarily surrendered and is now
in custody. Upon consideration of the
merits of defendant's appeal, we reverse.

Defendant was convicted by a jury of
entering a savings and loan association,

a Federal Credit Union, with intent to commit larceny in violation of 18 U.S.C. § 2113(a) and (g). He was sentenced to a term of ten years.

On appeal, defendant relies primarily upon asserted errors by the trial court as follows: in denying defendant's motion for judgment of acquittal on the ground of insufficiency of the evidence and in charging the jury.

We first consider the challenge to the sufficiency of the evidence. This court delineated the standard of review of sufficiency of the evidence, upon direct appeal, in United States v. Sherman, 421 F.2d 198, 199 (4 Cir. 1970), as follows:

"In considering the sufficiency of the evidence we do not determine whether it convinces us of guilt beyond a reasonable doubt, but only that the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt. [Citation omitted.] The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt."

The evidence against defendant was wholly circumstantial. Defendant's fingerprints were discovered on an empty cover of a book of safety matches which had been folded and used to jam a lock assembly on a door leading from an elevator lobby to a stairwell in the building wherein the Credit Union offices were located. Apparently the matchbook cover was so placed as to prevent the automatic locking of the door when closed. The Government produced the broken tip of a screwdriver which had been found at the base of a cabinet inside the Credit Union office and an expert testified that marks on the forced door where the matchbook cover was found were made by the broken tip. Another screwdriver was found at the scene of the burglary but there was no direct evidence as to ownership or possession of either screwdriver.

Three witnesses testified that defendant made credit purchases with cash down payments soon after the burglary had occurred. It was shown that defendant had at one time, more than a year prior to the burglary, worked laying tile in a building adjacent to the building where the crime occurred.

Defendant testified that he had no positive recollection as to where he had been on the date of the burglary; further, that he was with his brother during part of the weekend in question but neither he nor his brother could remember their precise activities during this time and for that reason he did not call his brother as a witness.

The Government contends that this accumulation of purely circumstantial evidence was sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt. We cannot agree.

The most damaging evidence was the defendant's fingerprints found on the matchbook cover. His fingerprints were not discovered elsewhere on the premises, on the damaged safes, desks or other articles in the Credit Union office which had been burglarized although some ten other fingerprints of unidentified persons were there obtained. The Government's fingerprint expert testified that it was impossible to determine how long defendant's fingerprints had been on the matchbook cover and admitted they could have been placed there months before the burglary. Thus, there was no direct evidence to show that defendant's fingerprints were impressed upon the cover at the time of the burglary. The probative value of an accused's fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed *only* during the commission of the crime. Borum v. United States, 127 U.S.App.D.C. 48, 380 F.2d 595 (1967); State v. Smith, 274 N.C. 159, 161 S.E.2d 449 (1968); State v. Gilliam, 245 S.C. 311, 140 S.E. 2d 480 (1965); Annot., 28 A.L.R.2d 1115, 1154, § 29 (1953); 30 Am.Jur.2d, Evidence, § 1144 (1967); 3 Wharton's

Criminal Evidence, 12th Ed., § 982, p. 480 (1955).

The Government would apparently have us infer that defendant's failure to remember precisely what he had done on the day of the crime and his failure to call his brother to testify as to their activities during the weekend of the burglary is somehow indicative of defendant's guilt. It is not surprising that neither defendant nor his brother could remember their whereabouts or activities during the weekend in question or on a particular day more than a year prior to the trial.

The evidence that defendant worked near the scene of the crime appears to be without probative value. Perhaps, at most, it would permit the jury to draw an irrelevant inference that defendant had some knowledge of the layout of the *adjoining* buildings.

■ While properly admissible, evidence of substantial expenditures by an accused shortly after a burglary as indicating sudden opulence is of questionable probative value here where defendant testified that part of the down payments on credit purchases came from an insurance settlement which he received for a personal injury. The Government did not contradict this explanation.

■ Perhaps the jurors were, at least in part, influenced and misled by the trial court's clearly improper, even though inadvertent, statement in charging that if the jury found that the fingerprints on the matchbook cover were those of defendant, then the jury *"must* conclude therefrom that he was the one who put the paper or the match box, or whatever you want to call it, covering, in the lock at the time in question. * * *" (Emphasis added.) Even though the court subsequently told the jury that defendant was not to be found guilty if the jury should conclude that somebody else placed the matchbook cover in the lock assembly without defendant's knowledge of or participation in the crime we conclude that this error alone would command reversal.

In view of our decision that the evidence is insufficient to sustain a jury finding of guilt beyond a reasonable doubt, it becomes unnecessary to consider other asserted error. The conviction is reversed and the case is remanded with the direction that the indictment be dismissed.

Reversed and remanded for dismissal.