**UNITED STATES of America, Appellee,**

v.

**Graham Franklin ANDERSON,
Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Claude Vance COOLEY, Appellant.**

**Nos. 79–5092, 79–5093.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1979.

Decided Nov. 26, 1979.

William L. Sitton, Charlotte, N. C., Irving B. Tucker, Jr., Raleigh, N. C., Michael Bailey, Charlotte, N. C. (Allan A. Bailey, Charlotte, N. C., on brief), for appellants.

Harold J. Bender, Asst. U. S. Atty., Charlotte, N. C. (Harold M. Edwards, U. S. Atty., Asheville, N. C., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and HALL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Graham Franklin Anderson and Claude Vance Cooley were jointly tried on a two count indictment and convicted by a jury on count one for violating 18 U.S.C. § 2113(b) (bank larceny) and on count two for violating 18 U.S.C. § 371 (conspiracy). Anderson and Cooley each received the maximum term of imprisonment under each count, with the sentences under count two to be served consecutively to those imposed under count one. Appellants contend the trial judge erred in overruling motions for judgment of acquittal on both counts and, alternatively, in not requiring the government to elect as between multiple conspiracies proved at trial.

Evidence adduced at trial tended to establish the following:

Between July 2, 1976 and February 19, 1977, "trapping devices" were discovered inside the night depositories of eight banks in the state of North Carolina. The trapping devices consisted of rectangular plastic slings and weights—either rolls of pennies or lead fishing weights. By use of metal strips, and in at least one instance a hacksaw blade, and cellulose tape, the device was attached to the interior of the depository chute in such manner that it "caught" a deposit which was subsequently retrieved by the person or persons responsible for attaching the device. In some instances the trapping device was discovered by bank patrons about to make or having made a night deposit. In other instances the device was

discovered by bank personnel in the course of normal procedures for clearing the night depository vaults during normal banking hours. Most of the trapping devices were inserted during weekends.

Count one of the indictment charged appellants with the larceny of bank deposits in the manner described above from a branch of the Northwestern Bank in Lenoir, North Carolina, on December 11, 1976. Count two, the conspiracy charge, alleged as overt acts the commission of the Lenoir larceny charged in count one and six additional larcenies or attempted larcenies:

| OVERT ACT | DATE | BANK AND LOCATION |
|---|---|---|
| 1 | 7/2/76–7/6/76 | First Citizens Bank and Trust Co. New Bern |
| 2 | 9/3/76–9/7/76 | Southern National Bank Charlotte |
| 3 | 9/4/76 | Northwestern Bank Statesville |
| 4 | 9/24/76–9/25/76 | Northwestern Bank Mt. Airy |
| 5 | 11/20/76–11/21/76 | Northwestern Bank Shelby |
| 6 | 12/11/76 | Northwestern Bank Lenoir |
| 7 | 2/18/77–2/19/77 | First Union National Bank Charlotte |

The evidence at trial established that the seven larcenies or attempted larcenies actually occurred. Additionally, there was proof of the commission of a larceny similar to those alleged in count two of the indictment of the Southern National Bank branch in Rockingham, North Carolina, during the weekend of December 4–5, 1976. The issue central to the contention of both defendants is whether their respective connections with the Lenoir larceny and with the conspiracy to steal from the eight banks were sufficiently established to permit jury conclusions beyond a reasonable doubt.

Expert opinion testimony tended to prove that:

(1) All eight of the trapping devices introduced at trial (as well as twenty-two other devices, or parts of devices which had been recovered from other banks in North Carolina, Alabama, Florida, Louisiana and

Mississippi) were "designed by the same person or persons working together"; [1]

(2) The metal strips incorporated into the devices recovered from the Northwestern Bank in Mt. Airy (overt act # 4), the Northwestern Bank in Lenoir (count one and overt act # 6) and the Southern National Bank in Rockingham were cut by the "exact same tool";

(3) A hair from a human head recovered from the tape used to attach the trapping device inside the night depository of the First Citizens Bank and Trust Company in New Bern (overt act # 1) exhibited the same microscopic characteristics as hair samples taken from Anderson;

(4) Anderson's fingerprints were lifted from two penny wrappers which were recovered from the night depository of the Northwestern Bank in Mt. Airy (overt act # 4);

(5) Cooley's left index fingerprint was lifted from beneath the tape and off the metal strip used to secure the trapping device inside the depository of the First Union National Bank in Charlotte (overt act # 7).

Testimony at trial tended to prove that Anderson had a conversation in February or March 1976 with a professional locksmith, Harry Driver, during which Anderson "expressed a desire to learn something about locksmithing and bank security equipment." Driver did not give any information to Anderson but he did advise Anderson of a correspondence school through which an appropriate course of study could be pursued.

Eleanor Tucker lived with Anderson during 1976 and 1977.[2] She testified that appellants took frequent weekend trips together although Anderson never revealed to her the purpose or destination of any of such trips. She further stated that Anderson saved and rolled pennies and that for a part of the time they lived together, including 1976, Anderson was unemployed.

On November 29, 1976, Anderson purchased for $3901 in cash a 1973 Cadillac automobile. On January 13, 1977, Anderson purchased for $5950 in cash a Ford van. In the course of the latter purchase, which occurred in New Orleans, Louisiana, Cooley, who was accompanying Anderson, actually retrieved from the trunk of the Cadillac the cash used to consummate the transaction. Five days later, on January 18, 1977, in Greenville, Mississippi, Anderson paid cash for two mobile CB units which were installed in the Cadillac and van, respectively.

With Anderson's consent FBI agents searched Anderson's residence and Cadillac automobile on March 7, 1977, and they observed but did not seize two CB Handi-Talkie radios, six rolls of pennies and several unused penny wrappers. A consent search on the same day of Anderson's mother's residence, next door to that of Anderson, revealed a key duplicating machine and several blank keys. Also on March 7, 1977, after waiving his *Miranda* rights, Anderson gave a statement to investigators in which he denied any involvement in any scheme of larcenies from bank night depositories. He stated he was unemployed; he could not

---

1. Counsel for appellants argued below, but do not on appeal, that the "same design" testimony of FBI Agent Deadman was incompetent and was not a matter subject to opinion "by experts or nonexperts." The trial judge overruled the objection and admitted the testimony and we have no occasion to review the propriety of that ruling.

2. Both Tucker and James Mackey Green proved to be troublesome witnesses for the government. During the investigation of the larcenies in the spring and summer of 1977, Tucker and Green gave detailed statements to agents of the FBI highly incriminatory of Anderson and Cooley, respectively. However, at trial, memory lapses severely weakened the testimony of each. The government, as to each

witness, put on the stand the interviewing agent who testified as to the substance of the interviews with each witness. Counsel for appellants in each case requested, and the trial judge granted, an interim instruction that the testimony of the agent was not substantive evidence but was admitted solely to impeach the testimony (consisting primarily of responses to the effect of "I don't remember") of the witnesses.

Nevertheless, the trial transcript shows that Tucker and Green did not suffer total memory losses and testified on direct or redirect examination to the extent set forth in the text above.

recall being in Mt. Airy, North Carolina, within the past ten to fifteen years and did not know how his fingerprints could have been found on penny wrappers recovered from the Mt. Airy depository. He at first stated that the Cadillac automobile belonged to his girlfriend's father but subsequently admitted purchasing the car for cash. He also admitted purchasing a CB radio in Rockingham, North Carolina on December 4, 1976.

James Mackey Green had a conversation with Cooley in the spring of 1977 in which bank night depositories were discussed and in which Cooley stated "he had heard" how to get into such depositories.[3]

Cross-examination by defense counsel elicited from several witnesses plausible explanations consistent with the defendants' innocence of the transactions and incidents described in the course of the government's direct examination of such witnesses. Motions for judgment of acquittal made at the close of the government's evidence were denied by the trial court. Neither appellant adduced any evidence.

Two issues are before us on appeal. The first is whether the government's accumulation of largely circumstantial evidence was sufficient to permit the jury to find appellants guilty beyond a reasonable doubt. The second is whether the government's proof established the existence of two or more conspiracies rather than the one conspiracy charged in the indictment and, if so, whether either appellant was thereby prejudiced.

We stated in *United States v. Sherman*, 421 F.2d 198, 199 (4th Cir.), *cert. denied* 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970):

> In considering the sufficiency of the evidence, we do not determine whether it convinces us of guilt beyond a reasonable doubt, but only that the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt. *United States v. Ragland*, 306 F.2d 732 (4th Cir. 1962) cert. den. 371 U.S.

949, 83 S.Ct. 504, 9 L.Ed.2d 498. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt.

▮ We agree with appellants that the evidence was insufficient as a matter of law to sustain their convictions as to count one of the indictment and that judgments of acquittal as to count one should have been entered at the close of the government's case. However, in so agreeing with appellants we reach that conclusion by a different route than that suggested by appellants.

In *U. S. v. Corso*, 439 F.2d 956 (4th Cir. 1971) (*per curiam*), the defendant appealed his conviction under 18 U.S.C. § 2113(a) for entering a Federal Credit Union with intent to commit larceny. The most damaging evidence against defendant in that case was the presence of his fingerprints on the cover of a matchbook. The matchbook had been folded and used to jam a lock assembly on a door leading from an elevator lobby to a stair well in the building in which the Credit Union offices were located. Except for the fingerprints on the matchbook cover, defendant's prints were not found at the scene of the burglary and there was no proof as to when the defendant's prints were impressed upon the cover. This court noted that other reversible error had been committed and ordered the entry of judgment of acquittal, stating:

> The probative value of an accused's fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed *only* during the commission of the crime. [Citations omitted]

*See also United States v. VanFossen*, 460 F.2d 38 (4th Cir. 1972).

Our decision in *Corso* was explained in *United States v. Harris*, 530 F.2d 576, 579 (4th Cir. 1976) (*per curiam*). In *Harris*, the appellant was convicted of bank robbery, 18 U.S.C. § 2113(a), on the strength of finger-

---

**3.** See n. 2, *supra*. Green's pre-trial statement, much more incriminating of Cooley than his

testimony, was only admitted for purposes of impeachment.

print evidence derived from the holdup note handed a bank teller and a confession the details of which were revealed through the testimony of three FBI agents. On appeal from his conviction thus obtained we observed:

> Harris contends that the fingerprints identified as his on the written note presented to the bank teller could have been impressed on the paper before the demand was written or presented. Our holding in *Corso* is not dispositive of this question because that opinion merely states that when fingerprint evidence is of questionable probative value, it cannot sustain a conviction if it is the *only* substantive evidence presented. In the present case, the fingerprint evidence was in addition to the incriminating admissions by the defendant as shown by the government's evidence.

*See also United States v. Bryant*, 454 F.2d 248, 250–51 (4th Cir. 1972) (fingerprints in an area generally inaccessible to strangers and apparently recently impressed sufficient to sustain conviction). The presence of Anderson's fingerprints on the penny wrappers[4] and of Cooley's print on the metal strip is not lacking in all probative force under the circumstances of this case since, as to either Anderson or Cooley, there is additional substantial evidence, albeit largely circumstantial, of their involvement in the *series of bank larcenies* charged in the indictment. Indeed, it is doubtful that the rule has ever been, as appellants urge, that fingerprints on movable objects *per se* lack probative value. *Cf. United States v. Lawrence*, 499 F.2d 962, 963 (4th Cir. 1974) (*per curiam*) (prints on an automobile used as a get-away vehicle).

Notwithstanding the existence of the fingerprint evidence and other evidence of appellants' involvement in the *series of larcenies* we note that *no* evidence was adduced connecting either appellant specifically with the crime charged in count one of the indictment: larceny of the Lenoir bank. The fingerprints related to larcenies in Mt. Airy and in Charlotte. One fatal flaw in the government's chain of proof as to count one is its failure to show that either Anderson or Cooley was the source of supply of the device used in the Lenoir larceny. The single source of supply of such devices could quite well have been some third party who was engaged in providing them to any number of would-be thieves. In a different case, proof by the government that the same type of shotgun had been used in several different crimes would not suffice to convict a defendant of all such crimes upon proof of his use of that type of gun in one crime. A second fatal flaw in the government's proof as to count one is the lack of any evidence that, even if the metal strip component of three of the devices were cut by the same tool, the tool so used was at any time possessed by Anderson, either individually or jointly with Cooley or anyone else. It is clear that the "same tool" testimony is insufficient as to Cooley in any event inasmuch as Cooley has not been connected by independent evidence with the larcenies of the banks in Mt. Airy or Rockingham which alone provide the "same tool" nexus with the Lenoir larceny.

█ In the light of those evidentiary voids we are constrained to hold that the jury must necessarily have entertained a reasonable doubt as to appellants' guilt under count one of the indictment.[5]

---

4. There was evidence from which the jury could have concluded the penny wrappers were components of the trapping device recovered from the Mt. Airy bank and that, in any event, the person who placed the device in the depository also inserted the wrappers.

5. When he was asked at oral argument what if any rationale was behind the form of indictment in this case, the Assistant United States Attorney indicated that perceived venue difficulties played a role in the decision to seek the indictment upon which appellants were tried.

We note that overt act # 1 took place in the Eastern District of North Carolina; overt act # 4 in the Middle District of North Carolina and all the others in the Western District of North Carolina, where venue was laid under the indictment. We note further, in passing, "[I]t has long been held that where a conspiracy is comprised of many transactions in various districts, venue as to all conspirators is proper in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators." *U. S. v. Whitaker*,

To show appellants guilty beyond a reasonable doubt of conspiring to commit bank larceny, the government's case required proof beyond a reasonable doubt of:

 (a) a knowing and intentional agreement or understanding to violate § 2113(b) and

 (b) the commission of an overt act in furtherance of that agreement.

It is axiomatic that conspiracy to commit an offense and commission of the offense are two separate and distinct crimes, *United States v. McGowan*, 423 F.2d 413, 416 (4th Cir. 1970) *quoting Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), and further, that in a given case the government's evidence may serve "double duty" as proof of conspiracy and of substantive offenses. *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir. 1975), *cert. denied*, 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976). It, therefore, follows that one or more items of evidence may be probative in differing degrees as to one or the other of the elements of conspiracy or of a substantive offense which may be the object of the conspiracy. The evidence must be viewed as a whole but also with focus upon the particular elements of the crimes charged. Failure by the government to adduce substantial evidence of appellants' guilt as to count one of the indictment does not foreclose scrutiny of the evidence, although clearly much the same, under count two, and a differing conclusion as to its sufficiency to establish beyond a reasonable doubt the crime of conspiracy. Circumstantial evidence of criminal acts may be used inferentially to prove the existence of a conspiracy to commit those acts. *United States v. Gibbons*, 602 F.2d 1044, 1048 (2d Cir. 1978). Whether such circumstantial evidence is sufficient as a matter of law to support a guilty verdict on the substantive crime does not bear on the sufficiency of that same evidence to convict for conspir-

acy. Conspiracy may be proved by evidence entirely circumstantial and viewed collectively. *United States v. Young*, 573 F.2d 1137 (9th Cir. 1978). A jury may "infer the existence of a conspiracy . . . ." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Nor is the government required in this case to prove beyond a reasonable doubt *all* of the overt acts alleged in count two of the indictment. Proof that at least one overt act was committed in furtherance of the conspiracy is sufficient. *United States v. Adamo*, 534 F.2d 31 (3d Cir.), *cert. denied*, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

It is frequently the case that the government must establish the existence of a conspiracy as an initial matter and then show the membership of a particular defendant or an association by such defendant with one or more conspirators so as to tie in such defendant to "the conspiracy". That situation arises where the government seeks to show one defendant's involvement in the conspiracy through the acts and declarations of a coconspirator, the well known exception to the hearsay rule. *See, e. g., United States v. Stroupe*, 538 F.2d 1063, 1065 (4th Cir. 1976):

At this preliminary stage, the conspiracy need not be proved beyond a reasonable doubt. *United States v. Jones*, 542 F.2d 186 at 203, No. 73–2520 (4th Cir. 1976). The government can discharge its burden by introducing "substantial, independent evidence of the conspiracy, at least enough to take the question to the jury." *United States v. Nixon*, 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974) (dictum). We have expressed the same principle in terms of "prima facie proof of the conspiracy," *United States v. Vaught*, 485 F.2d 320, 323 (4th Cir. 1973), or proof by a "fair

372 F.Supp. 154, 158 (M.D.Pa.) (citing *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912), *aff'd without opinion* 503 F.2d 1400 (3d Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975).

Without intending to trench upon prosecutorial discretion, we wonder why separate prosecutions, one in the Middle District of North Carolina where the Mt. Airy larceny occurred as well as one in the Western District, were not pursued.

preponderance" of independent evidence. *United States v. Jones, supra,* 542 F.2d at 203. "Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge." *United States v. Nixon, supra,* 418 U.S. at 701 n. 14, 94 S.Ct. [3090] at 3104; *Carbo v. United States,* 314 F.2d 718, 735–38 (9th Cir. 1963). The application of that principle has no place in this case. That is so because no acts or statements of Anderson were offered or considered as evidence against Cooley and no acts or statements of Cooley were offered or considered as evidence against Anderson.

 What was involved in this case insofar as the evidence shows was a simple two member conspiracy. It is true that the indictment in count two alleged the appellants "did combine, conspire, confederate and agree with each other and *with other persons to the Grand Jury unknown* . . . ." Whether that language in the indictment is surplusage or otherwise boilerplate in this case we need not determine for the proof at trial clearly established that, if any conspiracy existed, the same was a conspiracy involving only Anderson and Cooley. In the absence of evidence of the involvement of both appellants no conspiracy was shown to exist. *See, e. g., United States v. Goodwin,* 492 F.2d 1141, 1144 (5th Cir. 1974) ("A person can be convicted of conspiring with persons who are not identified by name in an indictment so long as the indictment asserts that such other persons exist *and the evidence supports such an assertion.*" [Emphasis supplied]). It was only upon proof of each of appellants' individual involvement in one or more of the individual larcenies in the overall *series of larcenies* that the proof matured sufficiently to enable the jury to determine beyond a reasonable doubt that the conspiracy was made out. Since the government adduced sufficient evidence to enable the jury to find beyond a reasonable doubt Anderson's involvement in the Mt. Airy larceny (overt act # 4) and by the same standard Cooley's involvement in the larceny of the First Union National Bank in Charlotte (overt act

# 7) the trial judge correctly submitted all of the evidence, properly admitted, and with appropriate limiting instructions where necessary to the jury for its consideration under count two. As previously discussed, it was wholly proper under the web of circumstances shown by the government's evidence, for the jury to infer an agreement or understanding between appellants. *Cf. United States v. Sperling,* 506 F.2d 1323, 1342 (2d Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975) (" . . . [I]t [is] the conspiracy that in some instances must be inferred largely from the series of criminal offenses committed."). The evidence did not show an express or formal agreement and such a showing is not required to sustain appellants' convictions. *American Tobacco Co. v. United States,* 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *United States v. Becker,* 569 F.2d 951, 959 (5th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *cf. United States v. Bradley,* 421 F.2d 924, 926 (6th Cir. 1970) (convictions for conspiracy to commit bank larceny affirmed where circumstantial evidence suggested "some communication"). Although it may be possible in most cases to speak of "the conspiracy" in a manner suggesting an organic entity functioning as though it possessed an independent identity beyond that of its known members, the evidence in this case of each appellants' involvement in a highly profitable and ingenious scheme shows substantially the likelihood of "preconcert and connivance." *See United States v. Peterson, supra,* 524 F.2d at 174. We are satisfied that the "evidence in its entirety" supported the convictions on the conspiracy count. *United States v. Walsh,* 544 F.2d 156, 161 (4th Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977).

 Much of what has already been stated substantially disposes of appellants' claim, grounded on *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) and *United States v. Goss,* 329 F.2d 180 (4th Cir. 1964) that, if the government's proof was sufficient to show the

existence of *any* conspiracy then it demonstrated at best the existence of more than one conspiracy. Accordingly, argue appellants, it was reversible error to fail to instruct the jury appropriately. However, since the evidence at trial provided no basis upon which the jury could infer any other person's complicity in the scheme of bank larcenies, there was no evidentiary basis from which an inference could arise that separate and distinct conspiracies existed. Since appellants do not raise any issue concerning the adequacy of the trial court's conspiracy charge other than the failure to instruct as to multiple conspiracies, and since our review of the charge as a whole satisfies us that no plain error appears, we have no occasion further to review or discuss the court's instructions. *See* Fed.R. Crim.P. 30, 52(b).

For the reasons set forth herein, appellants' convictions under count one are reversed and remanded for entry of judgments of acquittal as to each appellant; in all other respects, the judgments are affirmed.

*AFFIRMED IN PART; REVERSED IN PART and REMANDED.*