**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4487**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

JANSON LAMARK STRAYHORN,

                    Defendant – Appellant.

**No. 12-4495**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

JIMMY JAY STRAYHORN, JR.,

                    Defendant – Appellant.

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:11-cr-00368-CCE-2; 1:11-cr-00368-CCE-1)

Argued: December 11, 2013      Decided: February 26, 2014

Before GREGORY, DAVIS, and WYNN, Circuit Judges.

Affirmed in part, reversed in part, and vacated and remanded for resentencing by published opinion. Judge Wynn wrote the opinion, in which Judge Gregory and Judge Davis joined.

---

**ARGUED**: James B. Craven, III, Durham, North Carolina, for Appellants. Andrew Charles Cochran, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Tony E. Rollman, Enka, North Carolina, for Appellant Jimmy Jay Strayhorn, Jr. Ripley Rand, United States Attorney, Graham T. Green, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

---

WYNN, Circuit Judge:

This appeal arises from the convictions of Janson Strayhorn and Jimmy Strayhorn for the robbery of P & S Coins and a second planned robbery of All American Coins.

Regarding Janson Strayhorn's appeal, we conclude that there was insufficient evidence to convict Janson Strayhorn of robbing P & S Coins. Thus, we hold that the district court erred by denying his motion for judgment of acquittal on the charges related to the P & S Coins robbery. The government did, however, present sufficient evidence to sustain the conspiracy and firearm convictions against Janson Strayhorn relating to the All American Coins robbery.

Regarding Jimmy Strayhorn's appeal, we remand his case for resentencing on the brandishing charge arising from the P & S Coins robbery because the district court failed to instruct the jurors that to convict Jimmy Strayhorn of that offense, they needed to find that he had brandished a gun.

I.

In August 2010, two men robbed P & S Coins, a store in north Davidson County, North Carolina. The robbers arrived in a cream-colored Cadillac. One of the robbers pulled a revolver on Samuel Sims, the store's owner, while the other robber bound Sims's hands with zip ties and his legs with duct tape. The

3

robbers took coins from a safe and a Colt Peacemaker revolver from a display case and then left the store.

Starting on October 24, 2010, Jimmy Strayhorn, who had been detained in Guilford County Jail as a suspect for other crimes, placed several phone calls to his girlfriend, Thania Woodcock. The police listened to those calls and learned that Jimmy Strayhorn had asked his brother Janson Strayhorn to rob All American Coins and Collectibles in Butner, North Carolina to raise enough money for Jimmy Strayhorn to post his bond. These calls were forwarded to the Butner police and officers were dispatched to watch All American Coins. Butner police knew from the recorded phone calls that the robbers would likely be driving Woodcock's Cadillac.

On October 29, 2010, Captain Donald Slaughter, a Butner police officer, was patrolling the area around All American Coins in an unmarked police car when he noticed a white Cadillac driving slowly past the store. When the Cadillac neared the unmarked police car, the Cadillac's occupants "slumped down[,]" and the driver "place[d] his hand up over his eyes . . . to conceal his identity . . . ." J.A. 146-47.

Slaughter followed the Cadillac, which sped up and made several turns. Believing that the Cadillac's driver was trying to elude him, Slaughter called in the license plate, confirmed that he was following the targeted Cadillac, and stopped and

4

searched the car along with Officer Knutson, who had been called for back-up assistance. The officers discovered that Janson Strayhorn was the Cadillac's driver, Kenneth Jones was the passenger, and the vehicle was registered to Woodcock, Jimmy Strayhorn's girlfriend. Upon searching the Cadillac, the police found in the back seat a book bag and a laptop bag each containing a revolver. One of the revolvers was the Colt Peacemaker stolen from P & S Coins.

After arresting Janson Strayhorn and Jones, the officers obtained a search warrant for Woodcock's house. There, the police found the same type of black zip tie as those used in the P & S Coins robbery, a coin taken from P & S Coins, and ammunition. It is undisputed that Jimmy Strayhorn resided, at least occasionally, at the Woodcock residence but that Janson Strayhorn did not.

As a result of these incidents, Defendants Janson Strayhorn and Jimmy Strayhorn were charged with one count each of: robbery in violation of the Hobbs Act, which prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce (Count One); using, by brandishing, a firearm in relation to that robbery (Count Two); conspiracy to commit

robbery in violation of the Hobbs Act (Count Three); and using a firearm in relation to the conspiracy (Count Four).[1]

At the ensuing joint trial, various witnesses testified, including Sims from P & S Coins, who identified Jimmy Strayhorn as one of the robbers. Notably, Sims did not identify Janson Strayhorn. Jimmy Strayhorn's DNA was also found on the plastic zip ties left in P & S Coins.

Additionally, a fingerprint expert testified that a partial fingerprint on the duct tape used to bind Sims's feet belonged to Janson Strayhorn. But the expert testified that he could not determine when that fingerprint had been imprinted on the tape and that such a print could remain on the tape for as long as a year.

Defendants unsuccessfully moved for a judgment of acquittal from the jury verdicts of guilty on all counts; they now appeal to this Court.

## II.

With his lead argument, Janson Strayhorn contends that the government failed to adduce sufficient evidence to support his convictions involving the P & S Coins robbery and that the

---

[1] Janson Strayhorn was also charged with two firearm offenses, Counts Five and Six. But his appellate brief contains no argument as to Count Five, and Count Six was dismissed at trial and is thus not before us.

district court erred in denying his motion for judgment of acquittal. We review the denial of his motion for judgment of acquittal de novo. United States v. Hickman, 626 F.3d 756, 762 (4th Cir. 2010). Specifically, "[w]e review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) (quotation marks omitted). "'[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Id. (alteration in original) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

"In determining whether the evidence was sufficient to support a conviction, a reviewing court must determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Madrigal-Valadez, 561 F.3d 370, 374 (4th Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). As we have emphasized, in sufficiency challenges our focus "is the complete picture that the evidence presents." Burgos, 94 F.3d at 863. We thus consider the evidence "in cumulative context" rather than "in a piecemeal fashion[.]" Id.

7

Defendants were convicted of two counts relating to P & S Coins. The first was robbery in violation of the Hobbs Act. "A Hobbs Act violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce." United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003). The Hobbs Act defines robbery as "the unlawful taking or obtaining of personal property from the person . . . by means of actual or threatened force, or violence, or fear of injury, . . . to his person or property . . . at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1).

The second P & S Coins-related count was for using, by brandishing, a firearm in violation of 18 U.S.C. § 924(c)(1). To successfully prosecute that crime, the government "must show two elements: (1) the defendant used or carried a firearm, and (2) the defendant did so during and in relation to a drug trafficking offense or crime of violence." United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997).

We must first determine whether the government presented sufficient evidence to support Janson Strayhorn's convictions on the two P & S Coins-related charges. The centerpiece of the government's case against Janson Strayhorn consisted of a partial fingerprint on an easily movable object, i.e., duct tape. This Court has spoken on the sufficiency of such

8

fingerprint evidence before, and a close review of our precedent is instructive.

In United States v. Corso, we reversed a burglary conviction because we found that the government's evidence was insufficient. 439 F.2d 956, 957 (4th Cir. 1971) (per curiam). In that case, the evidence included the defendant's fingerprint on a matchbook cover that had been used by thieves to jam a lock, screwdrivers, and expert testimony that marks found on the door where the matchbook had been used had been made by one of the screwdrivers. Id. Witnesses also testified that the defendant made credit purchases with cash down payments soon after the burglary, and evidence indicated that more than a year before the burglary, the defendant had worked laying tile in a nearby building. Id. We held that the defendant's fingerprint on the matchbook cover was insufficient to support a burglary conviction.

In reaching that conclusion, we noted that "[t]he probative value of an accused's fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed *only* during the commission of the crime." Id. Such timing evidence was lacking. Regarding the rest of the government's evidence, we explained that some was without probative value and that the rest constituted an "accumulation of purely circumstantial evidence" that was

insufficient "to permit the jury to find the defendant guilty beyond a reasonable doubt." Id.

Similarly, in United States v. Van Fossen, we held that evidence of fingerprints on two photographic negatives and one engraving plate could not sustain the defendant's counterfeiting conviction because it was not supported by other evidence indicating that the fingerprints were imprinted at the time of a crime. 460 F.2d 38, 40-41 (4th Cir. 1972). We focused on the fact that, "[t]o warrant conviction the trier of fact must be able to reasonably infer from the circumstances that the fingerprints were impressed at the time the crime was committed." Id. at 41. But the government had failed to show when the defendant's fingerprints were imprinted on these moveable objects. "For this reason the prosecution rest[ed] on conjecture and suspicion[,]" and "the jury could only have guessed" that the imprinting occurred during the commission of the crime. Id.

By contrast, in United States v. Harris, we upheld a conviction where the defendant's fingerprints were on a note which read "'this is a holdup'" that was handed to a teller during a bank robbery. 530 F.2d 576, 579 (4th Cir. 1976) (per curiam). Significantly, however, the government presented additional incriminating evidence, namely, the defendant's own "detailed confession[,]" which was admitted even though the

10

defendant repudiated the confession before the trial.  Id.  In that context, we found "substantial evidence to permit the jury to find a guilty verdict beyond a reasonable doubt."  Id. Similarly, in United States v. Anderson, we sustained several bank robbery convictions supported, in part, by fingerprints on movable objects.  611 F.2d 504, 508-09 (4th Cir. 1979).[2]  As in Harris, however, "additional substantial evidence" supported those convictions.  Id. at 509.

Finally, in Burgos, this Court sustained the defendant's drug convictions supported in part by a fingerprint on a plastic bag containing cocaine base.  94 F.3d at 874-75.  Crucially, we noted that the fingerprint "was not the only incriminating evidence establishing Burgos's guilt; rather, there was an abundance of evidence establishing that Burgos was guilty . . . ."  Id.  That evidence included "conclusive" incriminating testimony that, for example, the defendant "knew" that his co-conspirators had crack cocaine on them and that the plan was "to sell the dope" at a North Carolina university.  Id. at 865, 875.

Viewing these cases holistically, they reveal that in challenges to convictions involving fingerprints on movable objects, in the absence of evidence regarding when the

---

[2] We reversed in part as to one robbery, however, because "no evidence was adduced connecting either appellant specifically with the crime charged."  Id. at 509 (emphasis omitted).

11

fingerprints were made, the government must marshal sufficient additional incriminating evidence so as to allow a rational juror to find guilt beyond a reasonable doubt.  Although the government may meet this burden with circumstantial evidence, that evidence must be sufficiently incriminating to support the conviction.

Here, it is undisputed that the fingerprint evidence against Janson Strayhorn as to Counts One and Two consists of one partial fingerprint on the duct tape used in the P & S Coins robbery.  The duct tape is, without question, an easily movable object.  And the government's expert conceded that he had no way to determine when Janson Strayhorn's fingerprint was imprinted on the tape and that the fingerprint could have been impressed even a year earlier.  The probative value of the fingerprint evidence here is thus "highly questionable[.]"  Corso, 439 F.2d at 957.

In addition to the partial fingerprint, the "most significant" incriminating evidence the government offered is Janson Strayhorn's "possession" of the Colt Peacemaker.  Appellee's Br. at 28.  That gun had been taken during the P & S Coins robbery and was found in the Cadillac that Janson Strayhorn was driving when Butner police stopped him near All American Coins.

12

In general, unexplained possession of recently stolen property may permit an inference of theft. See e.g., United States v. Long, 538 F.2d 580, 581 (4th Cir. 1976). In United States v. Newsome, this Court looked to the specific facts and context in determining that such an inference was appropriate. 322 F.3d 328, 333 (4th Cir. 2003). Regarding timing, we found that "there was evidence closely linking" the timing of the theft of the trees and subsequent sale of the stolen timber to nearby mills over a maximum two-week period. Id. ("Evidence showed that the trees discovered to have been cut down and stolen . . . around Memorial Day were sold by the defendants to the mills on May 24, May 30, and June 6 in close temporal proximity to their thefts."). Further, we noted that the property at issue—cherry tree logs illegally removed from national forests—was "huge and heavy" and "could [not] easily be moved and transferred from person to person." Id.

Engaging in a similar fact-specific inquiry here, we must conclude that the gun was no longer recently stolen by the time Butner police stopped Janson Strayhorn. Regarding timing, two months had passed between the P & S Coins robbery and Janson Strayhorn's arrest near All American Coins. The government introduced no evidence that Janson Strayhorn possessed the Colt until the days leading up to the planned robbery of All American Coins. In fact, Jones testified that the Colt, along with other

13

guns, was at Woodcock's house and Jones picked it up from her house to give to Janson Strayhorn in the days before the planned All American Coins robbery after Jimmy Strayhorn was arrested. Further, the Colt was small, light, and easily transferable relative to the "huge and heavy" logs at issue in Newsome. 322 F.3d at 333. In addition, Janson Strayhorn's possession of the gun, assuming arguendo that he did knowingly possess it, was not unexplained. Janson Strayhorn's brother Jimmy, who participated in the P & S Coins robbery, asked Janson Strayhorn to commit the All American Coins robbery to help him post bail. To do so, Janson Strayhorn drove Jimmy Strayhorn's girlfriend's car, where the Colt was stored in a bag in the back seat. In light of these facts taken together, Janson Strayhorn's possession of the Colt Peacemaker did not properly allow for an inference of his having participated in its theft from P & S Coins.

Moving beyond the fingerprint and the Colt, the government submits that Janson Strayhorn's conspiring with his brother to commit the second robbery is probative of his guilt on the first robbery. But this is little more than an impermissible propensity argument, cf. Fed. R. Evid. 404(b), and certainly cannot serve to sustain Janson Strayhorn's P & S Coins-related convictions.

Finally, the government argues that the fact that Woodcock's vehicle was used in both the P & S Coins robbery and

14

the All American Coins incident and that the zip tie found in Woodcock's home was the same type as that used in the P & S Coins robbery somehow demonstrate Janson Strayhorn's guilt. We disagree. Although the car and zip tie might demonstrate Woodcock's involvement (or that of Jimmy Strayhorn, who was at least an occasional occupant of the Woodcock residence), this evidence is not helpful in answering the question presented here: whether substantial evidence linked Janson Strayhorn to the commission of the P & S Coins robbery.

In sum, a fingerprint on an easily movable object with no evidence of when it was imprinted is sufficient to support a conviction only when it is accompanied by additional incriminating evidence which would allow a rational juror to find guilt beyond a reasonable doubt. Here, the government failed to adduce such evidence. Accordingly, we reverse the district court's denial of Janson Strayhorn's motion for judgment of acquittal on Counts One and Two.[3]

### III.

Janson Strayhorn also argues that the government failed to provide sufficient evidence to support his convictions on Counts

---

[3] Because we reverse the denial of Janson Strayhorn's motion for judgment of acquittal on the P & S Coins-related counts, we need not address his argument that the district court improperly excluded Kenneth Jones's exculpatory testimony as to the P & S Coins robbery.

15

Three and Four involving the conspiracy to rob All American Coins. Again, "[w]e review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." Jaensch, 665 F.3d at 93 (quotation marks omitted). And substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. (quotation marks omitted).

To prove a Hobbs Act conspiracy, the government must prove that the defendant agreed with at least one other person to commit acts that would satisfy the following three elements:

> (1) that the defendant coerced the victim to part with property; (2) that the coercion occurred through the wrongful use of actual or threatened force, violence or fear or under color of official right; and (3) that the coercion occurred in such a way as to affect adversely interstate commerce.

United States v. Buffey, 899 F.2d 1402, 1403 (4th Cir. 1990).

To prove the firearm charge in violation of 18 U.S.C. § 924(c)(1), the government must show that the defendant used or carried a firearm and that he did so during and in relation to a drug trafficking crime or a crime of violence. Mitchell, 104 F.3d at 652.

16

Janson Strayhorn argues that he intended to sell the Colt Peacemaker rather than rob All American Coins. Even assuming that to be true, substantial record evidence supports Janson Strayhorn's All American Coins-related convictions.

Specifically, recorded telephone calls that Jimmy Strayhorn placed from the Guilford County Jail reflect that Janson Strayhorn wanted to "get rid of that gun" but that Jimmy Strayhorn suggested Janson Strayhorn "use it" instead. Supp. J.A. 4. Defendants then discussed how much money Jimmy Strayhorn needed to make bail, and Jimmy Strayhorn described a "move" that would enable Janson Strayhorn to raise all of the money. Supp. J.A. 5-7. Although Janson Strayhorn stated that "[his] face ain't going to be seen" and that he intended to go only to "show[] them where it's at[,]" he nevertheless plainly agreed to do the "move" the next day: the morning of October 28, 2010. Supp. J.A. 7-8. The plans failed on October 28 because Jones was unavailable. On October 29, Defendants and Woodcock discussed the robbery again on a recorded call, and Jimmy Strayhorn described the plan in detail: Janson Strayhorn would get Woodcock's car and pick up Jones, they would "make that move[,]" and then Janson Strayhorn would return the car to Woodcock. Supp. J.A. 25. The transcript of the phone calls leaves little, if any, doubt that Janson Strayhorn agreed to the plan, even if he did so reluctantly.

17

The government also proffered the transcript of a phone call that Janson Strayhorn placed to Woodcock after he had been arrested. That call reflects Janson Strayhorn's anger at having agreed to the plan. Janson Strayhorn further stated that he was "thankful we ain't caught in no act of doing nothing[,]" but that they were stopped before the robbery commenced. Supp. J.A. 37–38.

In addition to the recorded calls, the evidence reflected that Janson Strayhorn took steps to carry out the robbery. First, Jones testified that Janson Strayhorn drove him to Butner using Woodcock's car. Second, Butner police stopped Janson Strayhorn after seeing him drive Woodcock's car past All American Coins with Jones as a passenger. Third, a search of the car turned up two guns.

In sum, the record contains substantial evidence, when viewed in the light most favorable to the government, to support Janson Strayhorn's All American Coins-related convictions. The district court did not, therefore, err in denying his motion for judgment of acquittal as to Counts Three and Four.

IV.

Finally, Jimmy Strayhorn appeals his sentence as to his Section 924 offense.[4] We hold, as the government conceded, that Jimmy Strayhorn's case must be remanded for resentencing in light of Alleyne v. United States, 133 S. Ct. 2151 (2013). In Alleyne, the Supreme Court overruled prior case law and held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Alleyne, 133 S. Ct. at 2155, 2158-63. In Alleyne, as here, the defendant was convicted of robbery affecting commerce and use of a firearm during and in relation to a crime of violence under Section 924. The Supreme Court noted that the district court "imposed [a] 7-year mandatory minimum sentence based on its finding by a preponderance of evidence that [a] firearm was 'brandished.'" Id. at 2163. But because the brandishing finding "increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt." Id. The Court thus vacated the defendant's sentence and

---

[4] Janson Strayhorn also appealed his sentence relating to the order of sentencing on multiple Section 924 convictions. Because we reverse the district court's denial of Janson Strayhorn's motion for judgment of acquittal as to the P & S Coins-related Section 924 conviction, he now has only one Section 924 conviction (for which he did not receive a brandishing enhancement) and his argument is moot.

19

remanded for resentencing in accordance with the jury's verdict, i.e., without the increased prison time for brandishing.

Although the Supreme Court decided Alleyne after the conclusion of Jimmy Strayhorn's trial and sentencing, Alleyne nevertheless applies because this appeal was still pending. Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").

In this case, Count Two charged Jimmy Strayhorn with "knowingly carry[ing] and us[ing], by brandishing, a firearm" during the P & S Coins robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The district court's jury instructions reflected that brandishing was one method of "using" the firearm rather than an element of the charged offense. See J.A. 683 ("To use a firearm means to brandish it, to point it at a person, to display it visibly, to fire it, to specifically refer to or speak about it, or otherwise to actively employ the gun during or in relation to the robbery."). However, the jury needed to find that the defendants brandished a firearm as an element of the offense for the higher mandatory minimum to apply. Because the record reflects that the jury made no such brandishing finding here, the enhanced mandatory minimum for

20

brandishing must fall as it did in <u>Alleyne</u>. Accordingly, we vacate Jimmy Strayhorn's sentence on Count Two and remand for resentencing.

V.

For the foregoing reasons, we reverse the judgment of the district court as to Janson Strayhorn's convictions on Counts One and Two, affirm Janson Strayhorn's convictions on Counts Three and Four, and vacate the sentence and remand Janson Strayhorn's case for resentencing in light of our disposition on his motion for judgment of acquittal. Further, we vacate and remand Jimmy Strayhorn's case for resentencing in light of the <u>Alleyne</u> error.

<u>AFFIRMED IN PART, REVERSED IN PART,<br>AND VACATED AND REMANDED FOR RESENTENCING</u>