COURT OF APPEALS
DECISION
DATED AND FILED

November 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP2148-CR**

Cir. Ct. No. 2019CF227

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JOSEPH J. YEOMAN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1	PER CURIAM.	Joseph J. Yeoman appeals his convictions for burglary and felony bail jumping, contending that the State introduced insufficient evidence at his jury trial to convict him of these offenses.[1]	Though circumstantial, the evidence at trial—which included Yeoman's DNA on a piece of a latex glove found in the burglarized house—was nevertheless sufficient to support the jury verdict.	We therefore affirm.

¶2	The State charged Yeoman with burglary and felony bail jumping in connection with the burglary of a private home from which more than ten thousand dollars' worth of property was stolen.	According to the complaint, the burglary was discovered by a housekeeper who was taking care of the residence while its owners were out of state.	The housekeeper found a piece of a latex glove inside the home in an entry area, which was later tested and shown to contain Yeoman's DNA, as well as a bedroom that "looked like a tornado" had passed through it.	She called the police, who came to the scene and discovered not only the "ransacking" of bedrooms but of other areas, including an office area in which it appeared that a reciprocating saw had been used to cut open a desk.	Investigators found that a barn on the property contained an open first aid kit containing latex gloves consistent with the glove piece found in the home and were told that two reciprocating saws were taken from the barn.

¶3	At Yeoman's jury trial, the housekeeper testified that when she entered the house on the day in question, she noticed there was a part of a glove on the floor as well as some decorative pillows out of place.	She called the owner of the house, who said the glove likely belonged to a contractor who was doing some

---

[1] Yeoman is not challenging the trial court's denial of his motion for postconviction relief, in which he sought to be found eligible for the Substance Abuse Program and the Challenge Incarceration Program.	Therefore, we will not discuss that postconviction motion in this decision.

remodeling work. She picked up the glove piece and put it on a dresser next to the front door. After she went upstairs and saw a bedroom "in disarray," she fled from the house and called 911.

¶4 After the owners of the home testified regarding items stolen in the burglary, the State called as witnesses two police detectives who were dispatched to the home on the day the burglary was discovered. The officers testified that they did not notice any evidence of forced entry into the house and that they could not find a viable fingerprint to lift around any exterior doors or around an unlocked window near the front door. They testified that they had spoken with the contractor doing the remodeling work on the property in their investigation, and that he told them some tools were missing from the barn, including two reciprocating saws. The officers also testified they had collected a reciprocating saw blade from the house that they believed was used to cut open a credenza and that they discovered an open first aid kit containing latex gloves consistent with the glove piece found by the housekeeper in the barn. They believed that "maybe the person responsible for the burglary had taken those gloves from the first aid kit as they were going through the outbuildings and then entered into the main house," although they did not submit an exemplar to the crime lab to confirm that the glove piece found in the house was from the kit found in the barn. The detectives' "operating theory at the time was that [the glove] ripped from whoever was wearing it and fell behind."

¶5 Next, the contractor who had been doing the remodeling work on the property testified that, although he was not on the premises, one of his employees was working there on the day in question. That employee's girlfriend—the contractor's stepdaughter—was also there to give the employee a ride home after work.

¶6     Finally, a DNA analyst from the Wisconsin State Crime Laboratory testified regarding DNA testing conducted as part of the investigation of the case. She stated that there was a "two-person mixture" of DNA found on the latex glove piece from inside the house. There was a "major male contributor," whose DNA was found both on the inside and on the exterior of the glove, and a "minor contributor," whose DNA (which could not be identified as being that of a male or female) was found only on the exterior of the glove. Buccal swabs taken from the contractor, his employee, the employee's girlfriend, and the two owners of the house were analyzed, and all of those individuals were ruled out as the minor contributor to the DNA mixture on the glove. The crime lab was able to definitively identify Yeoman as the major contributor of the DNA found on the glove piece.

¶7     Yeoman stipulated that, at the time of the burglary, he was charged with a felony and released on bail and that one of the conditions of his bail was that he commit no crime. Yeoman did not testify in his own defense, nor did he call any witnesses.

¶8     At the close of the State's case, Yeoman moved for dismissal or a directed verdict "based on the State's inability to prove the elements of the crimes." Defense counsel argued that "there hasn't been a nexus shown between Mr. Yeoman and that building or how that piece of glove might have gone there" which meant "there has not been sufficient evidence … to sustain a finding of guilt on the burglary charge." The trial court denied Yeoman's motion, concluding that the circumstantial evidence presented by the State was for the jury to weigh.

¶9     The State argued in closing that "the glove itself … is undeniably the piece of evidence that connects Mr. Yeoman to this offense" and that "Yeoman's DNA on this glove does not walk itself into the [victims]' residence." Although

Yeoman did not dispute that his DNA was on the glove material, defense counsel argued to the jury that "someone else's DNA is on that piece of latex" and that "a reasonable hypothesis" is that "[s]omebody picked up this piece of whatever and put it there" as a way to "throw the cops off." The jury ultimately convicted Yeoman on both counts with which he was charged, and the circuit court entered judgment. Yeoman appeals, contending that the State did not present sufficient evidence to convict him of burglary and felony bail jumping.

¶10    Yeoman has a heavy burden in attempting to set aside the jury's verdicts because our rules for review strongly favor sustaining them. *See **State v. Beamon***, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681; ***State v. Allbaugh***, 148 Wis. 2d 807, 808-09, 436 N.W.2d 898 (Ct. App. 1989). "[T]he standard for reviewing the sufficiency of the evidence to support a conviction is the same in either a direct or circumstantial evidence case." ***State v. Poellinger***, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). We must view the evidence in a light most favorable to the State, and we may reverse only if it "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." ***Id.*** Although Yeoman cites ***Poellinger*** for the proposition that "[a] finding of guilt may rest on circumstantial evidence if the evidence is sufficiently strong and convincing to exclude every reasonable hypothesis consistent with the defendant's innocence," that case makes clear that the standard applicable to the trier of fact "is not the test on appeal." ***Id.*** at 503. Indeed, we "must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." ***Id.*** at 507.

¶11    Yeoman cannot meet his heavy burden. The State introduced evidence of Yeoman's DNA on a piece of a latex glove found in the burglarized

5

house, which is circumstantial evidence of his being in that house. The glove piece itself—being consistent with the type of gloves kept in a barn on the property from which a saw used in the burglary was apparently also taken—and the circumstances of its discovery—in a private home in which Yeoman's presence was not authorized—were sufficient for a reasonable jury to infer that Yeoman dropped the glove upon entering or exiting the home in the course of committing the burglary. That the jury rejected defense counsel's proffered explanation for Yeoman's DNA being found inside the house (that the object containing his DNA was dropped by the burglar in an attempt to frame Yeoman) is not for this court to question. "It is the jury's task, … not this court's, to sift and winnow the credibility of the witnesses" and to make reasonable inferences from the evidence presented. *See State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Regardless of whether we might conclude, upon an independent review of the evidence in the Record, that there are reasonable theories consistent with Yeoman's innocence, we cannot "replace[] the trier of fact's overall evaluation of the evidence with [our] own." *See Poellinger*, 153 Wis. 2d at 506. We must simply determine whether evidence from which a reasonable jury *could* infer the requisite guilt was introduced, as it clearly was here, and affirm if it was. *See id.* at 507.

¶12 We reject Yeoman's argument based on *United States v. Strayhorn*, 743 F.3d 917 (4th Cir. 2014), that the State's evidence is insufficient because Yeoman's DNA was found on a movable object. In *Strayhorn*, the prosecution secured a conviction by relying on evidence of a defendant's partial fingerprint on duct tape (a readily movable object) that had been used to bind the legs of a victim in the robbery of a store. 743 F.3d at 921. The prosecution's expert witness "testified that he could not determine when" the fingerprint had been made on the duct tape and that it could have been as long as a year before the robbery. *Id.* The

Fourth Circuit vacated the conviction, holding "that in challenges to convictions involving fingerprints on movable objects, in the absence of evidence regarding when the fingerprints were made, the government must marshal sufficient additional incriminating evidence so as to allow a rational juror to find guilt beyond a reasonable doubt." *Id.* at 923.

¶13  Obviously, the Fourth Circuit's *Strayhorn* decision is not binding on this court. In addition, as the State aptly points out and as we have mentioned above, the piece of glove and the circumstances of its discovery in this case are sufficient incriminating evidence from which a reasonable jury could infer Yeoman's guilt. Unlike the movable object in *Strayhorn*, the glove piece was found not in a public place but in a private home that Yeoman was not authorized to enter.

¶14  Our decision in *State v. Scott*, 2000 WI App 51, 234 Wis. 2d 129, 608 N.W.2d 753, is more applicable and supports the jury's verdicts. Scott was convicted of burglary based on his fingerprint found on a "desk dock" from which a computer was stolen. *Id.*, ¶2. On appeal, he argued that this evidence was insufficient because the State failed to preempt alternative theories, including that his fingerprint was on the dock station before it entered the building from which it was stolen and had somehow survived delivery and use. *Id.*, ¶¶13, 15. This court pointed out the correct standard of review (as we have done above) and affirmed the conviction, stating that Scott's argument was based on "specious speculation" and noting that the State's evidence established not only that Scott's fingerprint was on the dock station from which the computer was stolen, but that Scott had no business being on the premises, which was a private building not permitting "casual entry." *Id.*, ¶¶15-16. These facts led to the reasonable inference that Scott committed the burglary. *Id.*, ¶16. Likewise, the State's evidence in this case established that

Yeoman was not authorized to be in the burglarized house and it was equally sufficient for a reasonable jury to infer Yeoman's guilt.

¶15     Finally, with respect to his conviction for felony bail jumping, Yeoman concedes that the sufficiency of the evidence supporting that conviction depends only on whether the conviction for burglary stands. Because, as described above, Yeoman has not succeeded in showing that his burglary conviction must be overturned, the judgment is affirmed in its entirety.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).